## BROWN *v.* CITY OF DENVER.

(*Supreme Court of Colorado, April 1st, 1884—Appeal from the District Court of Arapahoe County.*)

1. CITIES AND TOWNS—SPECIAL CHARTERS—AMENDMENT THERETO BY SPECIAL ACT—LEGISLATIVE DISCRETION. Whether towns and cities existing under special legislative charters at the time of the adoption of the constitution of the State should surrender such charters, and organize under the general law, is a matter to be determined by each of such municipal corporations, for itself. (Sec. 14, Art. XIV.) The constitution does not prohibit all special legislation; whether a special charter of such town or city can be amended by a general law, or must be by special act, is, under the constitution, a matter for legislative, and not for judicial determination. An act of the Legislature amending such charter will not be held void by the Courts.

2. PRIVATE PROPERTY CANNOT BE TAKEN WITHOUT DUE PROCESS OF LAW—COST OF SIDEWALKS. Private property cannot be taken, nor a charge made against it without "due process of law," which includes notice to the owner, and an opportunity to be heard in defense of his right, by

some tribunal competent to afford proper relief; an ordinance of the city providing that abutting property shall be charged with the cost of constructing sidewalks, which provides for no proper notice to the owner, or opportunity for him to be heard before such tribunal, is in conflict with both the State and Federal constitutions, and therefore invalid.

BECK, C. J. This was a proceeding instituted in the District Court of Arapahoe county to enjoin the city of Denver and its clerk from certifying to the county clerk and recorder of said county certificates issued by the city engineer to the Denver Sidewalk and Pavement Company, certifying that said company had constructed, in accordance with its contract with said city and with the sidewalk ordinance thereof, a plank sidewalk on Broadway street in said city, immediately in front of and abutting upon the lots of the plaintiff, the said lots being duly described in the complaint.

The complaint prays that a writ of injunction be issued, forever enjoining the city and its clerk from certifying to the certificates to the county clerk and recorder, and that the same be delivered up to be cancelled, as a cloud upon the title of the plaintiff's lots, and for such other and further relief as to the Court should seem proper.

A demurrer was interposed to the complaint, assigning as ground therefor that it did not state facts sufficient to constitute a cause of action. The Court sustained the demurrer, and the plaintiff electing to stand by her complaint, gave judgment that the defendant go hence without day.

The ordinance referred to in the complaint is known as the "sidewalk ordinance," and was passed by the city council of the city of Denver, on or about the 17th of March, A. D. 1881, to make provision for and to require the construction and repairs of sidewalks within the corporate limits of the city. It requires the owners of lots, abutting upon streets laid out, improved and in common use by foot travelers, to construct at their own expense, sidewalks of the kind described by the ordinance. By its provisions, the publication of the ordinance was to constitute notice to lot owners to construct the required sidewalks within sixty days thereafter, the kind of materials, manner of construction, dimensions, and other matters of description and detail, for the sidewalks required to be con-

structed in different portions of the city, being specified in the ordinance.

Provision was made for awarding a contract for one year, by the city, to the lowest responsible bidder, for the construction and repairs of sidewalks under the ordinance, and under the directions of the city council. The grading was to be done by the city, and if the owners of property failed to construct the walks within the prescribed time, the contractor was to proceed and build the same, and upon completion thereof, the city engineer was required to inspect the work, and if found to be done in conformity with the ordinance, he was authorized to issue certificates to the contractor, which should state the number of linear feet constructed, the number and description of lots and blocks before which the same was constructed, and the amount due the contractor under the contract, for the portion fronting upon each lot.

To this sum, was to be added fifty cents for each lot of twenty-five feet frontage, as payment for furnishing grades, inspections and other services by the city engineer. These certificates were to be presented to the city clerk, who was required to draw a warrant in favor of the contractor upon the "sidewalk fund" for the amount called for.

The ordinance required the city clerk to retain the certificates for a period of thirty days, to afford the owners of such property an opportunity to repay the amounts due upon the lots so improved; if repayment was not made within that time, he was directed to certify the certificates to the county clerk and recorder of Arapahoe county, who was required to place the respective amounts, named in the certificates, together with 10 per centum penalty thereon, to defray the cost of collection, upon the tax list of the current year, as a special assessment against each of the lots, to be collected as general city taxes are collected.

The foregoing provisions of the ordinance are warranted by an act of the Legislature, approved April 6, 1877, entitled "an act to reduce the law incorporating the city of Denver, and the several acts amendatory thereof, into one act, and to revise and amend the same."

Two principal objections are raised as to the validity of the ordinance, one being that the statute under which it was en-

acted is in contravention of the State constitution, it being a special law and therefore void; the other, that the provisions of the ordinance are in contravention of both the State constitution and the constitution of the United States, in not affording the owners of the property to be charged with the expense of the improvements provided for, an opportunity to be heard in respect to the same before such assessments became fixed charges against their property.

In *Palmer* v. *Way et al.,* 6 Colo., 106, we considered the question whether, under our constitution, the Legislature could authorize the city council, by ordinance, to impose upon the owners of lots fronting upon a public street the burden of constructing sidewalks in front thereof, and making the cost of construction a charge upon the property.

The conclusion was arrived at that assessments of this character could not be sustained by virtue of the power of taxation conferred by the constitution, but might be upheld as a police regulation. The two objections to the ordinance above mentioned were not considered in that case, and we will now proceed to consider and pass upon them.

*First*—Is the act of April 6, 1877, amending the city charter, in contravention of the State constitution respecting special legislation?

It was, no doubt, the intention of the framers of the constitution that cities and towns organized after its adoption should be organized under general and not special laws. This is evident from the language of Section 13, Article XIV: "The General Assembly shall provide by general laws for the organization and classification of cities and towns. The number of such classes shall not exceed four, and the powers of each class shall be defined by general laws, so that all municipal corporations of the same class shall possess the same powers, and be subject to the same restrictions."

It is well known, however, that at the time of the adoption of the constitution, the city of Denver and other cities and towns, were acting under special charters previously granted by the territorial Legislature. That it was not intended to interfere with these special charters, is made apparent by section 14 of said article XIV, which is as follows: "The General Assembly shall also make provision by general law, whereby any

city, town or village, incorporated by any special or local law, may elect to become subject to and be governed by the general law relating to such corporations."

This section clearly indicates that if a special charter is surrendered, in any case, for the purpose of organizing under the general law, to be passed, it must be by the voluntary act of the corporation. The matter is left to their election.

It is true that the prevailing spirit of the constitution is opposed to special legislation. It is not, however, prohibitory of all special legislation, but only to such as relates to certain specified subjects, and to such other cases as general laws are applicable.

Section 25, article V, enumerates the prohibited cases, and concludes as follows: "In all other cases where a general law can be made applicable, no special law shall be enacted."

This section is similar to section 53, article IV, of the Missouri constitution of 1875, which follows the enumeration of cases wherein special laws are prohibited, with the declaration: "In all other cases where a general law can be made applicable, no local or special law shall be enacted." But the latter section goes further, and declares that whether a general law can be made applicable in any case shall be a judicial question.

Prior to this constitutional provision, the courts of Missouri had held the question to be one for the exercise of legislative discretion, the exercise of which would not be interfered with by the Courts. Since our constitution does not make the question a judicial one, the Missouri precedents are in point. In the case of *The State ex rel. Henderson* v. *The County Court of Boone County*, 50 Mo., 317, the Court says: "But who is to decide when a general or a special law will answer the best purpose? It strikes me that this rule in reference to general or special laws is laid down as a guide for the Legislature, and the Legislature is to judge of the necessity of the particular case. The Legislature is quite as able to do this as the Courts. The Legislature must, in the first instance, exercise their discretion as to the necessity of a special instead of a general act. How can the Courts control that discretion? If a discretion be conceded at all, in my judgment, the Courts have no right to control it. It is agreed that there is no discretion in regard

to the passage of certain enumerated laws. They are inhibited by the letter of ths constitution. When the Legislature undertakes to pass these inhibited laws, it is the plain duty of the Courts to declare them unconstitutional."

The above views appear to us to be both sound and applicable to the phraseology of our constitution. They are affirmed by the subsequent cases of *The State ex rel. Robbins* v. *The County Court of New Madrid*, 51 Missouri, 83; and *Hall* v. *Bray*, *Ibid*, 288.

Similar views upon like constitutional provisions are announced in *The State of Kansas ex rel. Johnson* v. *Hitchcock*, 1 Kansas, 178; and *Gentile* v. *The State*, 29 Indiana, 409.

Whether a special city charter can be amended by a general law, applicable to the whole State, so as to meet the necessities of a particular case, may be a close question, or such an amendment may, perhaps, be impossible. Certainly the first body to pass upon that question is the Legislature. If a general law could not, for any reason, be made applicable to the case, then a special law is authorized by the constitution itself, and with the authorities cited, we are disposed to hold that the decision of the question is for the Legislature and not for the Courts. Had the intention been to make it a judicial question, it should have been so expressed in the constitution. Of course, any attempt by the Legislature to evade the constitutional inhibitions against special legislation, should be promptly thwarted by the Courts.

*Second*—Is that portion of the ordinance, the validity whereof is questioned by this proceeding, in contravention of the constitution of the United States and of the State of Colorado?

The constitutional provisions alleged to be violated are section 1, article XIV, of the amendments to the constitution of the United States, and section 25, article II, of the constitution of this State.

The former provides: "Nor shall any State deprive any person of life, liberty or property, without due process of law." The latter: "That no person shall be deprived of life, liberty or property without due process of law."

Similiar provisions appear in perhaps all State constitutions, and they have been elaborately discussed and considered by

the ablest Courts of the country, including the Supreme Court of the United States. The conclusions reached are uniform upon questions of the nature involved in this case. It is only necessary, therefore, to state the result of the adjudications.

The doctrine of the authorities is, that whenever it is sought to deprive a person of his property, or to create a charge against it, preliminary to, or which may be made the basis of taking it, the owner must have notice of the proceeding, and be afforded an opportunity to be heard, as to the correctness of the assessment or charge. It matters not what the character of the proceeding may be, by virtue of which his property is to be taken, whether administrative, judicial, summary or otherwise; at some stage of it, and before the property is taken or the charge becomes absolute against either the owner or his property, an opportunity for the correction of wrongs and errors which may have been committed, must be given. Otherwise the constitutional guarantees above cited are infringed.

Learned dissertations upon the meaning of the phrase, "due process of law," have been written by judges and law writers, but as applicable to summary proceedings of the character under consideration, its meaning is comprehended in the foregoing paragraph. If the law authorizing the proceedings provides for notice to the owner of the property to be affected, and gives him an opportunity to appear at a specified time and place, before a board or tribunal competent to administer proper relief, in order that he may be heard concerning the correctness of the charge before it is made conclusive, the constitutional requirements are satisfied.

But when the validity of a law or ordinance is questioned upon the ground that it authorizes the taking of property without such notice or hearing, the objection is not obviated by proof that a hearing has been had, as a matter of favor, in the case. Nor does it satisfy the constitutional requirements that the assessment is fair and just. A valid assessment cannot be made under an invalid law or ordinance, and its constitutionality is to be tested, not by what has been done under it, but by what it authorizes to be done by virtue of its provisions. This is the doctrine of the following cases, and many others might be cited to the same effect, but reference to them will be found in the cases cited: *Stewart* v. *Palmer*, 74 N. Y., 183;

*Thomas* v. *Gain,* 35 Mich., 155; *Davidson* v. *New Orleans,* 96 U. S., 97; *County of San Mateo* v. *Southern Pacific Railroad Company,* 8 Sawyer, 238.

Testing this "sidewalk ordinance" by the foregoing principles, it is found to be defective, both as to matters of notice and hearing. The only notice given to the owner of property is a notice to construct a sidewalk of a certain kind and dimensions in front of his property, within a specified time, or that the city will cause it to be constructed at his expense; and that if the cost of construction is not repaid within another specified time, the amount, with a certain penalty added, will be placed on the tax roll as a special assessment against his property, and collected in the same manner as general city taxes are collected.

The notice given to build the sidewalk, or that the city will cause it to be built at the owner's expense, is not the equivalent of the notice referred to in the authorities and contemplated by the constitution. It furnishes no information of the amount of the assessment that will be made, nor does it designate a time, place or tribunal, at and before which a hearing may be had. No such opportunity is afforded at any stage of the proceedings, but the expense of constructing the sidewalk is made an absolute charge against his property, upon which it may be sold to satisfy the same.

Until the walk is built, and a certificate therefor issued to the contractor, the owner cannot know what grounds of complaint he may have. The cost of grading may be included; the lumber or the materials may not be of the quality and kind required, or the walk may not be made in conformity with the requirements of the ordinance. In this respect, the ordinance is clearly defective. In so far, therefore, as the ordinance provides for making the cost of construction, a special assessment against the property improved, and for the manner of collecting the same without notice or hearing, we are of the opinion that it is in conflict with the State and Federal constitutions, and for this reason invalid.

The demurrer to the complaint should have been overruled.

The judgment must be reversed and the cause remanded.

DISSENTING OPINION.

HELM, J.   I concur with the majority of the Court in the reasoning and conclusion upon the latter branch of the case, and therefore in the reversal thereof.    Upon the subject of local and special legislation, I am not at present prepared to accept all the views expressed in the opinion.

*Jas. H. Brown,* attorney for appellant.

*Stallcup, Luthe & Shaffroth, Jas. A. Dawson,* city attorney, for appellee.