**No. 26369**

**In Re the Marriage of Rebecca Gertrude Franks v. Maurice Rudolph Franks**

(542 P.2d 845)

Decided November 17, 1975.                    Rehearing denied December 8, 1975.

James E. Bicknell, for petitioner-appellee.

Maurice R. Franks, attorney pro se.

*En Banc.*

MR. JUSTICE LEE delivered the opinion of the Court.

Appellant seeks to reverse a decree which dissolved his marriage to appellee.

The dissolution proceeding was commenced on April 19, 1973. Numerous procedural motions were filed. On February 15, 1974, appellant responded to the petition for dissolution of marriage, denying that the marriage between the parties was irretrievably broken. He asserted numerous defenses, including the absence of jurisdiction based upon the claim that, for a variety of reasons, the Uniform Dissolution of Marriage Act, section 14-10-101 *et seq.,* C.R.S. 1973, was unconstitutional.

A contested evidentiary hearing on the merits of the petition was held on February 28, 1974, after which the trial court entered findings, conclusions, and a decree dissolving the marriage, disposing of the property, and awarding of attorney's fees.

## I.

The parties were married in a civil ceremony on December 26, 1969, in Tennessee. Shortly before the marriage, they entered into an antenuptial contract. The contract provided, insofar as pertinent here, that the property of each of the parties would remain separate, including property of each acquired during the marriage. Paragraph 5 of the contract provided:

"In the event the intended marriage is unsuccessful, no award shall be made for alimony other than alimony *pendente lite,* during the pendency of the suit, and then for no greater a period than the number of months during which the parties resided together in matrimony. No award shall be made of permanent alimony. No award shall be made of lump sum alimony."

The contract was silent on the subject of attorney's fees. It also provided that it would remain in full effect under the laws of any state to which the parties might later remove.

Subsequent to their marriage, the parties moved to Custer County, Colorado, where appellant engaged in the private practice of law and appellee found employment in the local school system. They separated on April 12, 1973, and on April 19 appellee filed her petition for dissolution of marriage in the district court, claiming an irretrievable breakdown of the marriage. She simultaneously filed a motion supported by an affidavit for an ex parte restraining order, requesting that appellant be restrained from harassing her or communicating with her. This motion was granted.

Appellee then journeyed to Puerto Rico where she temporarily resided with her parents. Appellant thereupon filed an action in the United States District Court for the District of Puerto Rico, alleging a violation of his federal constitutional and civil rights in view of appellee's claim for a division of personal property and for temporary maintenance and support pending the outcome of the dissolution proceeding. Appellant subsequently filed a second federal action in the United States District Court for the District of Colorado, in which he made essentially the same federal constitutional and civil rights claims as in the Puerto Rico action. In *Franks v. Wilson,* 369 F. Supp. 304 (D. Colo.), the United States District Court abstained from ruling on appellant's claims until the state court had ruled on the validity and enforceability of the antenuptial contract under the Uniform Dissolution of Marriage Act.

The state court action then went forward and appellant expressly elected therein, under the doctrine of *England v. Medical Examiners* 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440, to reserve the determination of his claims under the United States Constitution to the federal court.

On February 7, 1974, appellant's various motions for stays of proceedings, to dissolve the temporary restraining order, for a continuance, and certain motions for discovery and for attorney's fees, were all denied. Appellee withdrew her request for temporary alimony and maintenance. On March 28, the dissolution petition was heard on the merits, and the court found the marriage was irretrievably broken. The court then set over

to each party his or her separate property. It awarded a freezer which had been acquired during the marriage to appellee, and also one-half of the joint 1972 federal income tax refund check.

Appellant moved for a stay of the decree terminating the marriage, in order that he might file a motion for a new trial. The stay was forthwith denied, as was appellant's motion for leave to file a new trial motion. The court stated that there was no rule requiring a motion for new trial, that it was dispensing with such a motion, and that if a new trial motion were filed it would be denied. Also, the court denied appellant's motion for a stay of the marriage dissolution, pending an appeal in which he intended to challenge the findings of the court that the marriage was irretrievably broken. Appellant then commenced this appeal.

It is readily apparent from the record that the district court misapprehended the requirement that a motion for a new trial be filed under C.R.C.P. 59(f) and that technically the decree of court is not a final decree from which an appeal may be taken to this court.

Section 14-10-105, C.R.S. 1973, provides that the rules of civil procedure shall govern all proceedings under the Uniform Dissolution of Marriage Act, except as otherwise specifically provided. There is no exception in the act which dispenses with the necessity of filing a motion for a new trial, or which permits the court in the exercise of its discretion to dispense with such a motion. The filing of a motion for a new trial, where required under the rule, as here, may not be dispensed with, and the court's denial of appellant's motion for leave to so file the new trial motion was an abuse of authority. In the circumstances of this case, however, we will not penalize the appellant, who sought to comply with the rule, by requiring that the cause be remanded for a hearing and determination on his motion for a new trial, but, rather, we will accept the appeal as though the court had determined his grounds for a new trial adversely to him.

We also believe it important preliminarily to note that the district court misconceived the meaning of section 14-10-120, C.R.S. 1973, in denying appellant's motion for a stay of the decree dissolving the marriage. This section provides:

"Decree. (1) A decree of dissolution of marriage or of legal separation is final when entered, subject to the right of appeal. An appeal from the decree of dissolution that does not challenge the finding that the marriage is irretrievably broken does not delay the finality of that provision of the decree which dissolves the marriage beyond the time for appealing from that provision, so that either of the parties may remarry pending appeal."

It is clear from the foregoing provision that when an appeal is taken from the finding that the marriage is "irretrievably broken" the finality of the decree dissolving the marriage may be stayed upon an appropriate motion duly made. The denial of appellant's motion for a stay was arbitrary and unwarranted.

We disapprove the rulings of the trial court concerning the motion for new trial and the denial of the motion for a stay. We do not, however, con-

sider that these erroneous rulings justify reversal.

## II.

We consider first appellant's contention that the Colorado Uniform Dissolution of Marriage Act violates several provisions of the Colorado Constitution: *Art*. II, Sec. 11 (no impairment of contracts); *Art*. II, Sec. 25 (due process of law); *Art*. II, Sec. 26 (slavery prohibited); *Art. II*, Sec. 29 (no discrimination on account of sex). Appellant, having elected under the doctrine of *England v. Medical Examiners,* 375 U.S. 411, 84 S. Ct. 461, 11 L.Ed.2d 440, to reserve to the federal court the determination of his federal rights, we emphasize that we deal here with his allegations only insofar as they arise under our state constitution.

In 1971, the General Assembly enacted the Uniform Dissolution of Marriage Act, which abrogated the traditional fault criteria for divorce, and substituted the single ground of "irretrievable" breakdown. In so doing, this state joined an ever-increasing number of others in adopting what have sometimes been referred to as "no-fault" divorce laws.[1] The reasons underlying this change in philosophy are fairly clear. The pre-1971 state of the law has been summed up in the following manner:

"* * * Colorado * * * permits the parties to obtain divorces by consent, but subjects them to humiliation, hypocrisy, sometimes perjury, and needless hostility of having to testify to one of the prescribed grounds * * *." Clark, *Divorce Policy and Divorce Reform,* 42 Colo. L. Rev. 403, 407 (1971).

To summarize briefly, the old law encouraged spouses whose relationship had deteriorated to perjure themselves in order to obtain divorces when neither party had actually committed acts enumerated by the statute as grounds for divorce. "Cruelty" as a ground, C.R.S. 1963, 46-1-1(1)(e), was in particular used to describe all manner of inter-spousal discord. *See H. Clark, Domestic Relations,* § 12.4. Furthermore, the fault-based system, involving the need for one spouse to "prove" the other "guilty" of one of a number of wrongs, induced a bitterness that only aggravated the trauma already present in the breakup of a family unit. These defects in the old divorce statute may well have contributed to undermining the public's respect for a legal system that relied on fictions to accomplish what the 1971 statute attempted to do in a more straightforward way. *See* Comment, *No-Fault Divorce: A Proposal for Mississippi,* 45 Miss. L.J. 179 (1974); Note, *Kentucky's New Dissolution of Marriage Law,* 61 Ky. L.J. 980 (1973); *Symposium on the Uniform Marriage and Divorce Act,"* 18 S. Dak. L. Rev. 531 *et seq.* (1973); Comment, *The End of Innocence: Elimination of Fault in California Divorce Law,* 17

---

[1] *See, e.g.,* Ariz. Rev. Stat. § 25-312 (1973 Supp.); Cal. Civ. Code § 4506 (1970); Fla. Stat. § § 61.031, 61.044, 61.052 (1971); Iowa Code Ann. § 598.17 (1974-1975 Supp.); Ky. Rev. Stat. Ann. § § 403.110, 403.130, 403.140, 403.150, 403.170 (Laws 1972, S.B. 133); Wash Rev. Code ch. 26.09. *See* Freed, *Grounds for Divorce in the American Jurisdictions,* 8 Family L.Q. 401 (1974).

U.C.L.A. L. Rev. 1306 (1970).

In attempting to increase the availability of divorces to estranged spouses, the legislature recognized that public policy does not encourage keeping two people together once the legitimate objects of matrimony have ceased to exist. *DeBurgh v. DeBurgh,* 39 Cal. 2d 858, 250P.2d 598. Taking note, then, of the benevolent intent of the legislature, and, as we must, of the presumption of constitutionality with which all statutes are clothed, *Harris v. Heckers,*185 Colo. 39, 521 P.2d 766; *People v. Summit,* 183 Colo. 421, 517 P.2d 850, we address the specific arguments raised by appellant.

A. Appellant first contends that the statute constitutes an impairment of the obligation of all marriage contracts made before the statute's enactment, in violation of the "contracts clause," *Art.* II, Sec.11 of the state constitution, which provides:

"* * * No ex post facto law, nor law impairing the obligation of contracts, or retrospective in its operation, or making any irrevocable grant of special privileges, franchises or immunities, shall be passed by the general assembly."

It has been stated on numerous occasions that a marriage is a contract between the parties. While this may be so, it is undeniably distinguishable from the ordinary civil contract. The institution of marriage has always been peculiarly a creature of the state, and subject to regulation by its legislature. In this aspect, marriage is the subject of a more immediate interest to the state than is the ordinary contract. These differences have resulted in the determination that a marriage is not a "contract" within the meaning of the contract clause of the constitution. *Goldberg v. Musim,* 162 Colo. 461, 427 P.2d 698; *Maynard v. Hill,* 125 U.S. 190, 8 S.Ct. 723, 31 L.Ed. 651; *Ryan v. Ryan,* 277 S. 2d 266 (Fla. 1973); *In Re Marriage of Walton,* 28 Cal. App. 3d 108, 104 Cal. Rptr. 472; *Adams v. Palmer,* 51 Me. 480. As the United States Supreme Court, quoting from *Adams v. Palmer, supra,* said in *Maynard v. Hill, supra:*

"'When the contracting parties have entered into the married state, they have not so much entered into a contract as into a new relation, the rights, duties, and obligations of which rest not upon their agreement, but upon the general law of the State, statutory or common, which defines and prescribes those rights, duties, and obligations. They are of law, not of contract. It was of contract that the relation should be established, but, being established, the power of the parties as to its extent or duration is at an end. Their rights under it are determined by the will of the sovereign, as evidenced by law * * *. It is not, then, a contract within the meaning of the clause of the Constitution which prohibits the impairing of the obligation of contracts. It is, rather, a social relation, like that of parent and child, the obligations of which arise not from the consent of concurring minds, but are the creation of the law itself; a relation the most important, as affecting the happiness of individuals, the first step from barbarism to incipient civilization, the purest tie of social life and the true basis of human progress.'"

Since marriage is not a contract within the meaning of the contract clause, the legislature has broad control over it, the reasonable exercise of which will not run afoul of the constitutional protection of contracts.

B. Appellant next asserts that a dissolution of marriage statute impairs his property without due process of law because the only recognized ground for dissolution in this state, irretrievable breakdown, is vague and overbroad. We fail to see that appellant has advanced any valid property interest which has been impaired through the dissolution. He has maintained throughout this case that in the marriage in question there is no such thing as marital property due to the terms of the antenuptial agreement. The property involved was treated as separate by the trial court, and we find no reason to invoke the Due Process clause here. But, in any event, we conclude that there has been no violation of due process. "Irretrievable" breakdown is no more vague or incapable of definition than "became impotent through immoral conduct," has been "extremely and repeatedly cruel," or being an "habitual drunkard," all of which constituted, under the prior Colorado statute, grounds for divorce. C.R.S. 1963, 46-1-1. We agree with the reasoning of the Florida Supreme Court in *Ryan v. Ryan, supra*. In rejecting constitutional challenges to the Florida "no-fault" statute, that court said:

"The word 'irretrievably' is defined: 'impossible to recoup, repair or overcome.' Webster's Third International Dictionary (1966), page 1196.

"When compared with the fourth statutory ground for divorce, 'extreme cruelty,' in the former statute * * * the new language for dissolution of marriage * * * appears to us to be no more susceptible to the charge of vagueness * * *. [That term] was held in case after case to envision a great variety of faults and wrongdoings that were deemed sufficient for the granting of divorce, but the phrase was never invalidated for vagueness or overbreadth * * *."

*See also In Re Marriage of Cosgrove,* 27 Cal. App. 3d 424, 103 Cal. Rptr, 733. Where the objects of the marital relationship are destroyed to such an extent that it seems improbable that the couple will again resume the relationship of husband and wife, the marriage is irretrievably broken. This is, of course, a determination to be made under the statute by the trial judge on the basis of all the facts and circumstances, and the factors underlying the determination made will necessarily vary in each case depending upon the mutual tolerance or lack of tolerance of the spouses.

The basic requirements of the Due Process clause of our constitution are that no person be deprived of valuable rights without adequate notice and opportunity for hearing. *Woodson v. Ingram,* 173 Colo. 65, 477 P.2d 455; *White v. Davis,* 163 Colo. 122, 428 P.2d 909; *Brown v. City of Denver,* 7 Colo. 305, 3 P. 455; *Sigma Chi Fraternity v. Regents of the University of Colorado,* 258 F. Supp. 515 (D.Colo.). We find that the statute does make provision for such notice and hearing before the termination of the marriage. *See* section 14-10-107(4) and (6), C.R.S. 1973.

C. Appellant's contentions that the dissolution of marriage statute works involuntary servitude upon him and that, as applied by the courts of this state, it constitutes an impermissible discrimination against the male sex are similarly without merit. The involuntary servitude argument is based upon the assertion that one may be forced to work for the benefit of the other spouse's attorney, despite the fact that the burdened party is without "fault." We do not believe, however, that this burden, even if onerous, can be equated with slavery or involuntary servitude within the meaning of Article II, Section 26 of the Colorado Constitution. That provision was intended primarily to echo the language of the Thirteenth Amendment to the federal constitution and to ensure that the practice of African slavery as it existed in portions of this country until the middle of the last century would never find root in Colorado.

The provision in the dissolution of marriage statute which sanctions the assessment of attorney's fees was intended to equalize the status of the parties to the dissolution proceeding. Where two parties have undertaken the obligations implicit in the marriage relationship, it becomes the duty of the courts upon the dissolution of that relationship to ensure that neither is forced to suffer unduly as a consequence of its termination. One spouse may have foregone earning potential in performing the domestic duties involved in maintaining the marital domicile, to the end that the other spouse might devote his full potential to the earning of income for the family. It would be inequitable upon dissolution to saddle the former with the burden of his reduced earning potential and allow the latter spouse to continue in an advantageous position which was reached through a joint effort. Thus, the dissolution of marriage statute, in an effort to eliminate the inequities resulting from the termination of the relationship, provides for attorney's fees, as well as maintenance and child support, when the relative status of the parties involved indicates the need of such. The involuntary servitude argument is without merit.

D. In support of his argument concerning impermissible sex discrimination, appellant cites statistics concerning child custody in the application of the dissolution provisions by the courts of this state. We would require much more, however, to overcome the presumption of constitutionality of the statute and the propriety of the actions of our courts. Appellant's statistics do show that in a vast majority of the custody cases over the past few years, the wife has been awarded custody of the children. From this he leaps to the conclusion that the courts improperly favor women in dissolution proceedings. What the bare statistics do not show, however, is whether custody was contested or even desired by the husbands in any significant number of cases. The fact of the grant of custody itself has no great significance unless seen in light of the circumstances of the case which underlies such grant. Appellant has failed to demonstrate that he was discriminated against on the basis of his sex. We find no violation of *Art.* II, Sec. 29.

## III.

Appellant complains that the court erred in its finding of irretrievable breakdown of the marriage under section 14-10-110, C.R.S. 1973. It is clear from the statute that a finding of irretrievable breakdown is one of fact and, where the allegation of the petition is denied, it must be proven as any other essential element of the cause of action. The record here discloses ample evidence from which the court could conclude that the marriage was indeed irretrievably broken.

Appellee testified in some detail that she and her husband had fights and arguments, that she was continually unhappy with him, and that he had at one time threatened her life. Although appellant had ample opportunity to present evidence to rebut that of appellee, he merely testified that it was his opinion the marriage was not irretrievably broken.

We note that although the dissolution of marriage statute was intended as a "no-fault" divorce act, the actual granting of the decree is not automatic or perfunctory under all circumstances. Where the parties do not agree as to the breakdown of the marriage, it is imperative for the court to weigh all the evidence and make its own independent determination of that fact. While the dissolution of marriage act did eliminate all the former defenses to divorce in this state, it did not eliminate the necessity of proving an irretrievable breakdown where that basic allegation is denied in the pleadings.

## IV.

A number of appellant's remaining arguments revolve around the effect given by the trial court to the antenuptial contract between the parties. At the outset, it appears that the agreement was specifically sanctioned by several sections of the Louisiana Code. *See* Louisiana Civil Code, articles 2325, 2328, 2329, 2332 and 2392. Unless there is some strong public policy in this state against such contracts, the antenuptial contract must be given full force and effect in the courts of this state. We can find no authority that such contracts are violative of any such policy. Quite to the contrary, such contracts are generally enforceable. We agree with the statement in *Irwin v. Irwin,* 150 Colo. 261, 372 P.2d 440:
"Constitutional provisions inhibit the passage of any law impairing the obligation of contracts. *A fortiorari* the judiciary cannot relieve parties to a fair and binding contract from the obligations thereof, or deny them the rights granted. * * *"

The record here suggests no challenge by appellee to the validity of the agreement and its binding effect upon her. Indeed, appellee made no claim to any of the separate property of appellant. And, the trial court gave full recognition to the validity of the agreement in its decree of dissolution. No alimony or maintenance whatsoever was awarded appellee. The respective claims to the separate property of each were honored by the court.

Appellant argues, however, that the antenuptial agreement was not given effect insofar as it related to the award of attorney's fees, inasmuch as the court made an award to appellee of $1,680 for that purpose,

which appellant claims is contrary to the terms of the contract. As heretofore pointed out, the contract was silent as to attorney's fees, and as we construe its terms it was limited to certain rights between the contracting parties. Those rights related to property interests, temporary and permanent alimony, and lump sum alimony. The matter of attorney's fees was left open by the antenuptial contract, and there was, therefore, no unconstitutional impairment of that contract by the award granted appellee in this case

### V.

■ Appellant complains that the court abused its discretion in awarding appellee an attorney's fee of $1,680. We find no such abuse in the record. Appellee was unemployed and without funds for this purpose, whereas appellant was a practicing attorney with property resources.

■ He further argues that the court erred in awarding appellee the freezer and one-half of the joint income tax refund check for 1972. The court's conclusion in this regard was based upon disputed evidence as to the ownership of these items. We will not, therefore, disturb the award of these items to appellee.

We have considered appellant's other contentions of error, among which are the propriety of the issuance of the temporary restraining order, the denial of discovery, the denial of appellant's motion to strike, and the effects of appellee's remarriage during the pendency of appeal. We find no prejudicial error as to the court's rulings in regard thereto, or in other alleged errors not herein discussed.

The judgment is affirmed.

Mr. JUSTICE DAY does not participate.