In re the MARRIAGE OF Beverly STOKES, f/k/a Beverly S. Douthit, Appellant,

and

Glen S. Douthit, Appellee.

No. 78–601.

Colorado Court of Appeals, Div. I.

Dec. 20, 1979.

Rehearing Denied Feb. 7, 1980.

Certiorari Denied April 7, 1980.

Sheldon, Bayer, McLean & Glasman, P.C., James T. Bayer, Denver, for appellant.

Hough, Grant, McCarren & Bernard, William J. McCarren, Longmont, Robert Bugdanowitz, P.C., Robert Bugdanowitz, Denver, for appellee.

SILVERSTEIN, Judge.

In this dissolution of marriage proceeding, the trial court determined that the antenuptial agreement of the parties was valid and that it precluded the wife's claim for division of property and maintenance. On appeal by the wife, we affirm in part and reverse in part.

The agreement was signed on May 8, 1972, and the parties were married on May 14, 1972. In the agreement the husband's net worth was stated to be approximately $3,500,000, and that of the wife to be approximately $250,000. It further provided that, "irrespective of a future marriage between them, and irrespective of a subsequent dissolution of such marriage, all of his and her respective properties shall, always and forever, remain free and clear of any rights, claims or interests on the part of the other party."

All of the parties' assets were included in the "properties" covered by the agreement, including "those which [each party] now owns and which [each party] may, at any time in the future acquire." And, further, that any items acquired by either party after the marriage "shall remain a part of [that party's] assets."

## I.

The wife contends the trial court erred in finding the agreement to be valid and binding on the parties. She asserts it is invalid because 1) the agreement was contrary to public policy, 2) the husband was guilty of fraud and over-reaching, 3) the agreement was unconscionable under §§ 4–2–302, 14–10–112, and 14–10–113, C.R.S.1973.

■ Antenuptial agreements are valid and enforceable in dissolution proceedings, and are not void as against public policy. In re Marriage of Ingels, Colo.App., 596 P.2d 1211 (1979); See In re Marriage of Franks, 189 Colo. 499, 542 P.2d 845 (1975).

■ The wife asserts that the husband was guilty of fraud and over-reaching, claiming that the husband failed to disclose all of his assets, provided no financial statement listing his assets, and failed to advise her to obtain independent counsel to represent her in the transaction. The evidence on all of these facts was conflicting, and the trial court, in its findings, found that there was a proper disclosure of assets, and that the wife was given ample opportunity to consult a lawyer, was advised to do so, and declined. These findings are supported by the evidence.

■ It is undisputed that the execution of an antenuptial agreement was discussed for at least a month before it was actually signed, and that the wife had stated at various times that she was not marrying husband for his money. Thus, even though the valuation of the husband's assets set forth in the agreement was only an approximation, the agreement was not therefore invalid. The amount of the husband's assets was not materially misstated, and thus his failure to supply an itemized list was not fatal to the validity of the agreement. Marriage of Ingels, supra; In re Estate of Lewin, Colo.App., 595 P.2d 1055 (1979).

■ The wife testified that she did not see the agreement until attending a conference with the husband's attorney, at which the agreement was signed. The husband testified that he had given her two copies of the instrument approximately a month prior to the meeting and told her to discuss it with her lawyer. The husband's attorney (who is not the attorney in this action) testified that the wife brought a copy of the agreement with her to the meeting. It is undisputed that at the meeting the agreement was fully explained, that she said she understood it, and that she was willing to sign. The trial court relied on the husband's evidence, and, under these circumstances, her failure to consult an attorney did not invalidate the agreement, Estate of Lewin, supra. The wife failed to bear her burden of proof on the issues of fraud and over-reaching. Moats v. Moats, 168 Colo. 120, 450 P.2d 64 (1969); Marriage of Ingels, supra.

The wife also asserts that the agreement was unconscionable at the time of the hearing, and, therefore, relying on § 14–10–112, C.R.S.1973, she concludes that it was not binding. We reject this argument.

■ Not only is the statute explicitly limited to separation agreements, see § 14–10–112(1), C.R.S.1973, but also the two types of agreement—separation and antenuptial—are distinct in content and purpose.

■ Antenuptial agreements are intended as a means of preserving the status quo as to property interests existing before marriage; in contrast, separation agreements resolve claims as to property interests which have matured because of the marriage status. In further contrast to separation agreements, antenuptial agreements are executory in nature until a marriage actually occurs; they have as their principal consideration the marriage itself; and they do not dispose of, or divide, any property, but rather fix the rights of the parties with respect to the specified property, regardless of the duration of the marriage.

■ Hence, like other contracts, antenuptial agreements, absent fraud, are binding on the parties according to their terms, and " 'the judiciary cannot relieve parties to a fair and binding [antenuptial] contract from the obligations thereof . . . .' " *Marriage of Franks, supra.*

■ Accordingly, here, the agreement could not be successfully challenged as being unconscionable at the time of the hearing. Instead, the only appropriate inquiry "is whether the parties entered into the agreement with full knowledge of its consequences." *Estate of Lewin, supra.*

■ The fact that the husband's assets increased in value while the wife's did not, does not permit the court to second guess the propriety of the parties' actions in executing the contract, for the parties enter into antenuptial agreements because they cannot foretell the future. *Marriage of Ingels, supra.* Further, the fact that there is a disparity in the respective value of the assets does not render the agreement invalid. *Marriage of Ingels, supra.* The trial court was correct in judging the validity of the agreement on the facts existing at the time of its execution.

## II.

■ The wife also urges that even though the contract is valid, it cannot preclude her right to a share of the increase in the value of the husband's assets. We disagree.

Section 14–10–113(2), C.R.S.1973, provides:

"For purposes of this article only, 'marital property' means all property acquired by either spouse subsequent to the marriage except:

. . . . .

(d) Property excluded by valid agreement of the parties."

Nevertheless, the wife argues that the increase in value cannot be included in a "valid agreement" because § 14–10–113(4), C.R.S.1973, provides that "an asset of a spouse acquired prior to the marriage . . . shall be considered as marital property, for purposes of this article only, to the extent that its present value exceeds its value at the time of marriage . . . ."

We do not interpret the latter provision as being a limitation on the right to exclude an increase in value from a valid agreement. Rather it merely defines such an increase to be marital property, which, like other marital property as defined in subsections (2) and (3) of section 113, can be excluded by agreement of the parties. *Marriage of Ingels, supra.*

The present agreement defined the husband's separate assets as those which he "now owns and which he may at any time in the future acquire." Further the wife waived all her rights to all and any of the husband's assets, and stated, in the agreement, that it was her intention that the husband's assets "shall, always and forever remain [his] sole and exclusive properties, the same as if no marriage between the parties had existed." By similar provisions the husband relinquished his rights to the wife's assets.

Thus, the intent of both parties was that the assets of each, including future acquisitions, should remain the separate property of each of them. Increases in value are equivalent to future acquired assets, and hence, under the agreement, continued to be separate, and not marital, property.

## III.

The wife further asserts that, even though the agreement is valid, the trial

court erred in determining that it precluded an award of maintenance. We agree.

The trial court determined that maintenance was "excluded" by the following language in the agreement: "[Husband's] Assets shall, always and forever, remain [husband's] sole and exclusive properties, the same as if no marriage between the parties had ever existed." Looking to this language, the court concluded: "It is these assets, which the parties agreed would be [husband's] sole and exclusive property, which would be the source of any maintenance payable to [the wife]."

 In any dissolution action in which there is a division of property and an award of maintenance, the divided property loses its status as marital property and becomes the "sole and exclusive" property of the spouse to whom it is awarded, and any maintenance awarded must be paid from that property, regardless of whether it was marital or separate property prior to the dissolution. Thus, the fact that the husband's property remained separate during the marriage and after is not material in determining the maintenance issue.

 In interpreting a written contract we are not bound by the determination of the trial court, but must make our own judgment on the merits, *Board of County Commissioners v. Anderson,* 34 Colo. App. 37, 525 P.2d 478 (1974), the issue being solely one of law. *Sentinel Acceptance Corp. v. Colgate,* 162 Colo. 64, 424 P.2d 380 (1967). Contracts which are complete, clear in their terms, and free from ambiguity are to be enforced in accordance with the expressed intention of the parties. *Radiology Professional Corp. v. Trinidad Area Health Ass'n, Inc.,* Colo., 577 P.2d 748 (1978). Courts cannot rewrite contracts or add terms thereto. *Yamin v. Levine,* 120 Colo. 35, 206 P.2d 596 (1949).

 In the present agreement no mention was made as to maintenance in the event of dissolution of the marriage. Further, although each of the parties specifically waived many enumerated rights, the right to maintenance is not included in the list. "Waiver is the voluntary abandonment or surrender by competent persons of a right known by them to exist, with the intent that such right shall be surrendered and such persons be forever deprived of its benefits. [citations omitted] For a waiver 'there must be a clear, unequivocal, and decisive act of the party showing such a purpose.' *Hall v. Beymer,* 22 Colo.App. 271, 125 P. 561. There was no such act here." *Colorado Bank & Trust Co. v. Western Slope Investments, Inc.* 36 Colo.App. 149, 539 P.2d 501 (1975). In the absence of any reference in the agreement to a relinquishment of the right to maintenance, we find that the trial court erred as matter of law in concluding that the agreement barred the wife's claim for maintenance.

IV.

 The wife's claim for attorney's fees and costs, not having been raised in the motion for new trial, will not be considered. *Bates & Sons, Inc. v. Great Western Ry.,* 158 Colo. 259, 406 P.2d 98 (1965).

 Finally, the wife asserts that the trial court erred in permitting the husband's attorney to prepare the findings of fact, conclusions of law, and orders without the prior knowledge or consent of the wife's attorney. We have carefully reviewed the record in this case and conclude that the standards set forth in *Uptime Corp. v. Colorado Research Corp.,* 161 Colo. 87, 420 P.2d 232 (1966), have been satisfied.

That part of the judgment determining that the antenuptial agreement is valid is affirmed. That part determining that the agreement barred wife's claim for maintenance is reversed, and the cause is remanded for further proceedings on the claim for maintenance in accordance with § 14–10–114, C.R.S.1973.

COYTE and KELLY, JJ., concur.