In re the MARRIAGE of Debora MacMillan NEWMAN, Appellant and Cross–Appellee,

and

Richard Wenrick Newman, Appellee and Cross–Appellant.

No. 79CA0539.

Colorado Court of Appeals, Div. II.

May 22, 1980.

Rehearing Denial June 19, 1980.

Certiorari Granted Sept. 2, 1980.

Shaw, Spangler & Roth, Edward C. Moss, Stan L. Spangler, Timothy E. Whitsitt, Denver, for appellant and cross–appellee.

Wolf & Slatkin, P. C., Albert B. Wolf, Denver, for appellee and cross–appellant.

BERMAN, Judge.

Wife appeals the trial court's judgment denying her maintenance in accordance with its determination that an antenuptial agreement executed by the parties was valid. Husband appeals the award of attorney's fees to wife. We affirm in part and reverse in part.

Both husband and wife had been previously married. Prior to their marriage in 1975, they entered into an antenuptial agreement which provided that in the event of a dissolution, wife would receive an automobile, the sum of $2,000, and all property owned by wife prior to the marriage. The agreement also provided that any income earned by wife would be placed in a joint savings account, and that, in the event of dissolution, wife would receive one–half of these earnings. By the terms of the agreement, wife would accept these items as her sole property in full satisfaction of any and all claims for maintenance or division or property.

Wife petitioned for dissolution of marriage in 1977, requesting maintenance, costs of maintaining the action, attorney's fees, and disposition of the property by the court. Husband requested that all financial rights and obligations be resolved according to the terms of the antenuptial agreement. The trial court found the agreement to be valid and found that the terms of the agreement had been complied with. It also awarded attorney's fees of $2,500 to wife.

## I.

Wife first argues that the antenuptial agreement is invalid as against public policy because it is conducive of dissolution of marriage. This argument has been previously considered and was rejected in *In re Marriage of Ingels*, Colo.App., 596 P.2d 1211 (1979), which held that spouses–to–be have

the right to enter into realistic antenuptial agreements which contemplate the possibility of dissolution.

## II.

Wife contends that even if the provisions of the antenuptial agreement relating to division of property are not invalid as against public policy, those provisions are invalid as a matter of law because the terms are constructively fraudulent. We find adequate evidence in the record to support the trial court's findings that there was no fraud or misrepresentation with respect to the antenuptial agreement, and that there was adequate disclosure of the husband's assets to the wife prior to the execution of the agreement. *In re Marriage of Ingels, supra.*

## III.

Wife next argues that antenuptial agreements which limit or eliminate a spouse's right to maintenance is void as against public policy. We agree.

The issue of whether parties may contractually limit or eliminate the statutory right to maintenance in an antenuptial agreement is one of first impression in Colorado. This court reserved this question, *Ingels, supra,* and our Supreme Court did not reach the issue in *In re Marriage of Franks,* 189 Colo. 499, 542 P.2d 845 (1975), as there the validity of the antenuptial agreement was not challenged with respect to maintenance.

Under our statutes, there is a continuing duty of support, even after dissolution, which may fall upon either spouse. Section 14–10–114, C.R.S.1973 (1979 Cum.Supp.). Unlike the statute dealing with the disposition of property, § 14–10–113, C.R.S.1973 (1979 Cum.Supp.), which permits the parties to remove disposition of property from judicial control by a valid agreement,[1] the General Assembly has not permitted parties to determine maintenance by such antenuptial agreements. The General Assembly has au-

thorized parties to determine maintenance rights in separation agreements drawn up in contemplation of dissolution of the marriage subject to a finding of conscionability by the court. Section 14–10–112, C.R.S. 1973 (1979 Cum.Supp.). Separation agreements and antenuptial agreements are separate and distinct legal documents, *In re Marriagre of Stokes,* Colo.App., 608· P.2d 824 (1979). And we now decline to legislate judicially that which the General Assembly has refused to enact.

Further, the principle that the interspousal support obligation, which is imposed by law, cannot be contracted away by antenuptial agreements is based on the sound policy consideration that the conditions which would determine an appropriate maintenance award cannot be accurately foreseen at the time antenuptial agreements are entered into. *In re Marriage of Gudenkauf,* 204 N.W.2d 586 (Iowa 1973); *Connolly v. Connolly,* S.D., 270 N.W.2d 44 (1978). And the public interest in the enforcement of the legal obligation to support, to prevent, in the extreme, one spouse from becoming a public charge, overrides the desires of the parties to fix their support obligations in the event of divorce by antenuptial agreements. *In re Gaudenkauf, supra.* Therefore, we hold that the provision of the parties' agreement which proposed to waive any entitlement to maintenance is not binding and that wife's entitlement to maintenance must be determined as of the date of the hearing on wife's application for maintenance in accordance with § 14–10–114, C.R.S.1973 (1979 Cum.Supp.).

## IV.

Husband contends that the awarding of attorney's fees to the wife was error because she engaged in unnecessary litigation and the amount awarded was not sustained by any evidence. We disagree.

---

1. Section 14–10–113(2)(d), C.R.S.1973 (1979 Cum.Supp.) provides: "[For the purposes of this article only, 'marital property' means all property acquired by either spouse subsequent to the marriage except:] property excluded by valid agreement of the parties."

■ Because the antenuptial agreement was silent on the matter of attorney's fees, the awarding of such fees is controlled by § 14–10–119, C.R.S.1973 (1979 Cum. Supp.). *In re Marriage of Franks, supra.* The awarding of attorney's fees is discretionary with the trial court and will not be disturbed on review if supported by the evidence. *In re Marriage of Icke,* 35 Colo. App. 60, 530 P.2d 1001 (1974), *aff'd,* 189 Colo. 319, 540 P.2d 1076 (1975). Our review discloses no abuse of discretion by the trial court.

Judgment affirmed in part, reversed in part and cause remanded to the trial court for proceedings consistent with this opinion.

RULAND, J., concurs.

PIERCE, J., dissents.

PIERCE, Judge, dissenting.

I would affirm the trial court on all issues.

I do not agree with the majority's conclusion that an antenuptial agreement which determines spousal maintenance in the event of dissolution of marriage is invalid as against public policy.

The public policy involved in "No Fault" dissolution statutes is discussed at some length in *Posner v. Posner,* 233 So.2d 381 (Fla.1970). The modern trend has been to hold that antenuptial agreements fixing maintenance are valid. As stated in *H. Clark, Antenuptial Contracts, 50 U.Colo.L. Rev.* 141 at 149 (1979):

"It is certainly not demonstrable as a general proposition that an agreement respecting alimony made before marriage promotes divorce. On the contrary, it may promote marital stability, providing it is arrived at fairly and makes adequate provision for both spouses. footnote omitted In any event, it will reduce the hostility and destructiveness of a divorce if one should occur. Furthermore, in the many states which now have adopted marriage breakdown or a similar ground for divorce, there is no longer as much reason as formerly to be hostile to agreements which facilitate divorce. By adopting this ground for divorce these states have recognized that nothing is to be gained by trying to hold spouses together when in fact their marriage has broken down. The antenuptial agreement in such states can hardly be more conducive to divorce than the divorce grounds themselves."

The majority here bases its decision that antenuptial agreements fixing maintenance are invalid on a purported legislative intent inferred from the wording of § 14–10–113, C.R.S. 1973, and on a statement from *In re Marriage of Stokes,* Colo.App., 608 P.2d 824 (1979), to the effect that separation agreements and antenuptial agreements represent distinctly different concepts and the principles applicable to one are not applicable to the other.

While it is true that § 14–10–113, C.R.S. 1973, does specifically provide for judicial recognition of agreements between the parties relating to property, this provision is contained in the statutory definition of "marital property," and only states that marital property does not include "property excluded by valid agreement of the parties." The Uniform Dissolution of Marriage Act contains no reference to antenuptial agreements, and it was not a legislative action, but rather a judicial interpretation of this court in *In re Marriage of Ingels,* Colo.App., 596 P.2d 1211 (1979), which determined that § 14–10–113, C.R.S.1973, applies to antenuptial agreements covering disposition of property. As a result, I find it difficult to attribute to the General Assembly a specific intent to prohibit antenuptial agreements relating to maintenance only because they are not provided for by statute.

With respect to *Stokes,* that opinion dealt with an antenuptial agreement which related to the disposition of property, but which, as specifically found by this court, did not deal with maintenance. I would, therefore, read that language in *Stokes* which purportedly applies to antenuptial agreements in general to be limited to those portions of antenuptial agreements dealing only with property. In particular, I would rule that,

contrary to the majority's reading of the holding in *Stokes*, when considering maintenance as opposed to the disposition of property, there is much more similarity than dissimilarity between antenuptial agreements and separation agreements.

Section 14–10–112, C.R.S.1973, specifically allows the parties to a marriage contemplating separation or dissolution to provide for maintenance by an agreement that is binding on the court unless it is found to be unconscionable. In view of the obvious intent of this statute to allow the parties to exercise their right to contract, I would find the reasoning in *In re Marriage of Ingels, supra*, and *In re Marriage of Franks*, 189 Colo. 499, 542 P.2d 845 (1975), regarding the validity of antenuptial agreements in general to be equally persuasive with respect to maintenance provisions. I see no reason stated or implied in the statutes or any significant difference in public policy which justifies validating antenuptial agreements dealing with property rights but not those pertaining to maintenance.

In response to the argument that an appropriate maintenance award could not be accurately foreseen at the time the antenuptial agreement was entered into, I would suggest that (1) the same problem exists with respect to, but has not precluded, antenuptial agreements relating to the division of property, and (2) the solution to this problem lies in the test to be used by the trial court in determining the validity of the maintenance agreement. The court would initially determine, as with an antenuptial property agreement, whether the parties entered into the agreement with full knowledge of its consequences, and whether any fraud was involved. *Stokes, supra*. Additionally, however, the court would determine, as with a maintenance provision in a settlement agreement, whether the maintenance provision is unconscionable at the time of the hearing. Section 14–10–112, C.R.S.1973. In this context, an agreement not unconscionable would be one determined by the court to be fair, reasonable, and just. *In re Marriage of Wigner*, 40 Colo.App. 253, 572 P.2d 495 (1977).

Because the trial court here found this antenuptial agreement to be free of fraud and misrepresentation, and because it did not find the agreement to be unconscionable, I would affirm its conclusion that the maintenance provision of this agreement was binding on the parties.