In the Matter of the Estate of HERMAN B. BARUCH, Deceased.

Surrogate's Court, Suffolk County, August 4, 1954.

*Baer, Marks, Friedman, Berliner & Klein* and *Bouvier & Beale* for Robert P. Baruch and another, as executors of Herman B. Baruch, deceased, petitioners.

*Fowler & Kendrick* for Anna M. Baruch, respondent.

*Richard W. Hawkins,* special guardian.

HAZLETON, S. In this proceeding petitioners seek a determination that the respondent, surviving spouse of decedent, has no right of election to take against the will by reason of her execution of an antenuptial agreement. The widow wishes to avoid the antenuptial agreement by supplanting it with a notice of election, upon the grounds that she was taken advantage of and duped into signing away her rights. To be specific, the lady alleges that at the time of signing the disavowed document, the conditions prevailing were of such inequality as to place her in a position of disadvantage with her proposed spouse; that she was not adequately apprised of the rights of a wife in the estate of her husband, that she did not understand the nature and consequences of her act or the terms of the agreement, that a true

picture of the assets of her husband was not presented to her, and that the decedent was guilty of overreaching.

The agreement was executed on September 22, 1949, the marriage taking place a month later. The decedent, seventy-seven years of age, was a widower with two adult children, and two grandchildren while the respondent was but thirty-six and the mother of three infant children by a former marriage. Decedent was a physician, financier, and diplomat of international reputation, having served as a United States Ambassador to both Portugal and the Netherlands. Respondent, born at The Hague, held the title of baroness, is widely travelled, has command of several languages, including English and is a highly intelligent woman.

After a continental courtship, begun at the captain's table on the ship taking him to his diplomatic post at The Hague, decedent, before their marriage, sent respondent and her three children from The Hague to Bagatelle, his manor home on Long Island, where they lived until his death on March 15, 1953.

As a preparatory step toward the marriage, the decedent had his attorney draft an antenuptial agreement, with copies for both himself and respondent. Nothing appears to have been hurried. When the parties concerned with the execution of the document foregathered at the apartment of the decedent in Manhattan, there were present the decedent, respondent, decedent's lawyer, who had been his advisor for upwards of thirty years, an associate of this lawyer, and a lady who had been employed by the lawyer and also knew the decedent for about thirty years. Two copies of the agreement were produced by the lawyer and handed to the principals, who read them.

The respondent complains that she was without the advice of individual counsel, did not have the pertinent statutes of the State of New York sufficiently explained to her, and was not aware of the nature and consequences of the paper she executed. On the other hand, she admitted that she read, signed and acknowledged the document. Both the lawyers present testified that respondent had had explained to her at that conference by Mr. Phelan Beale, personal attorney for the decedent, in language understandable by a layman, what she was about and especially the legal consequences of her act. This testimony was supported by that of the secretary, Miss Troy, who, when she returned to her office, following the practice of that office, wrote a legend of what had transpired at the conference. This memorandum was put in evidence by respondent during the cross-examination of Miss Troy.

In respect to whether decedent revealed to respondent a true picture of his assets, we again have all those present affirming that respondent was told substantially what constituted the decedent's estate. If what they said is to be taken as true, then it is clear that no important possession of the decedent was withheld from the respondent. It is significant that to the third paragraph of the antenuptial agreement, at the time of its execution, the decedent added in handwriting, the words " except as provided in the wills or codicils of said parties ". Those words clearly reveal that at that time, the decedent had in his mind, the thought of subsequently providing for the respondent by the terms of his testament, which he later did.

Upon her examination before trial, as well as at the trial, respondent stated that she was ignorant as to the meaning of an antenuptial agreement, had never previously been concerned with one, and had not been a party to a premarital agreement when she married her first husband in Holland in 1933. Also, when counsel for petitioners, much to the surprise of respondent, confronted her with the original of a premarital agreement, executed by respondent before her first marriage in 1933, she still denied any recollection of same. In view of this occurrence, and in order to give respondent time to collect her thoughts, so as to refresh her memory, this court excused the witness. The next morning when respondent returned to the stand, she admitted signing the paper and gave her explanation as to why she was unable to recall the incident when on the witness stand the day previous. It may well be that when first questioned about the execution of this agreement in Holland over twenty years ago that respondent was unable to recall the occasion.

Now we come to the charge of overreaching, which means to overdo matters, or get the better of one in a transaction by cunning, cheating, or sharp practice. Anent this phase of the transaction, what are the facts? Decedent was a man of wealth, while respondent was of modest means. Previous to their marriage, he sent respondent and her children to his menage on Long Island, where she lived according to her future husband's standard of living. Also before the marriage, decedent had told his lawyer that he had in his bag a draft for $10,000, which he wished his attorney to give respondent if anything happened to him. On September 22, 1949, at the very time the antenuptial agreement was signed, decedent executed a codicil to his will, giving $25,000 to respondent. During their marriage, he gave her about $20,000, which she still has invested, and also provided

for and sent her children to good schools. Later, on October 22, 1949, immediately after the respondent and decedent were married, he executed another will, in which he left his wife $50,000, plus certain of his household furnishings and personal belongings. Two years later, on September 23, 1951, decedent executed his last will and testament, admitted to probate herein, under which his widow receives some household furnishings and personal belongings of the decedent, plus 25% of his residuary estate. During the conference at which the antenuptial document was executed I am certain the substantial investments of decedent were mentioned. Respondent had resided at her future husband's home so that she knew him to be a man of wealth. She had seen in advance of the time of signing a copy of the antenuptial agreement so that she might consider its terms and seek legal advice if she saw fit. It is clear to me that at all times respondent was totally uninhibited as she went about preparing for her marriage and when she signed, initialed and acknowledged her agreement. I cannot find in the record any believable evidence that respondent was taken advantage of in any respect whatsoever, and consider the execution of the antenuptial agreement to have been her free and untrammeled act.

In the *Matter of Phillips* (293 N. Y. 483, 491), the Court of Appeals wrote " we read chapter 174 of the Laws of 1930 — amending section 18 of the Decedent Estate Law — as an expression by the Legislature of public policy which gives approval to antenuptial agreements made prior to 1930 and thereafter." And it is clear beyond cavil that a properly executed agreement waiving the right of election cannot be avoided except for fraud or other vitiating factor. Therefore the judgment of this court is that the antenuptial agreement is valid and binding upon the respondent who by reason thereof has no right to elect, under section 18 of the Decedent Estate Law, to take against the provisions of the will of decedent.

It follows that the prayer of petitioners is granted in all respects.

Submit decree accordingly on notice.