No. 20503.

In the Matter of the Estate of Delbert L. Stever,
Deceased, Mabel Stever *v*. Ervin L. Stever and
Yvonne E. Hudson, Executors.
(392 P.2d 286)

Decided May 18, 1964.

1

Mr. ROBERT T. JAMES, for plaintiff in error.

Messrs. FOARD and FOARD, for defendants in error.

*In Department.*

Opinion by MR. JUSTICE HALL.

ON September 12, 1956, Mabel A. Kiistner (herein referred to as Mabel), plaintiff in error, and Delbert L. Stever (now deceased, herein referred to as Delbert), then engaged to be married, entered into an ANTENUP-TIAL AGREEMENT, followed by their marriage on September 19, 1956.

Each had been previously married, the previous marriages having been terminated by the death of their respective spouses.

The parties had for many years lived in or near Ulysses, Kansas, and had known each other for over twenty-five years. At the time of the agreement Mabel lived at Ulysses and owned property there; Delbert then lived in Colorado and owned farm lands in Kansas and Colorado and a home in Broadmoor, Colorado Springs, Colorado.

At the time of the marriage Mabel was sixty-two years of age and Delbert sixty-four. Mabel had a daughter from her first marriage and Delbert had a son and a

daughter from his first marriage. There were no children from the marriage of Mabel and Delbert.

In the agreement it was provided:

" * * * and the parties hereto desire to make suitable provision for their respective rights in said properties, in lieu of any rights of inheritance by the laws of descent and distribution, and all other rights or claims of said parties hereto, or the survivor of either of said parties; and

"WHEREAS, each of the parties hereto have been fully advised from the other party of the property which each of the parties own at this time.

* * *

"1. That each of the parties hereto upon and after their marriage, will retain their respective properties * * *, and that neither party * * * upon the death of the other, will inherit any of his or her property * * *.

"2. * * * That in the event [Mabel] * * * should survive [Delbert] * * * and should live with him as his wife until his death, then * * * in lieu of any and all interest to which she might be entitled as his surviving widow * * * [Mabel] shall receive the sum of $10,000.00 in cash * * * and * * * a life estate in said residence property [Broadmoor] * * *. As to all other property now owned by either of said parties hereto, or which may be obtained by either party hereto during the remainder of their lifetime, each of the parties hereto waives any rights of inheritance as the surviving spouse or heir at law of the other, and in the event of the death of either of them intestate, the property so owned by each of said parties, shall pass to their respective heirs or legatees the same as if such person had died unmarried."

This agreement was not acknowledged when signed; however, on February 3, 1959 (two years and four months after the agreement was made and the marriage consummated), the parties appeared before an attorney

in Colorado Springs, who caused to be typed on the agreement an acknowledgment, and each then and there, before a notary public, acknowledged the execution of the agreement. This was done in order to make the agreement eligible for recording in Kansas and to the end that certain Kansas property belonging to Delbert could then be sold and conveyed, and six tracts of Kansas lands standing in the name of Delbert were conveyed, Mabel signing the deeds.

On October 3, 1961, Delbert, in conformity with the terms of the antenuptial agreement, made a will, wherein he bequeathed to Mabel $10,000.00 and a life estate in the Broadmoor home "* * * this bequest being made as according to a pre-nuptial agreement entered into between myself and my said wife prior to our marriage."

Delbert died November 17, 1961, and his will was admitted to probate on December 5, 1961.

Shortly after the death of Delbert, Mabel removed all of the furniture from the Broadmoor home and shipped it to Ulysses; she also posted a "for rent" sign at the Broadmoor home and, by writing, leased said home for a period of three years at a monthly rental of $200.00.

About two months after the will was admitted to probate, Mabel filed her claim renouncing the will and, as his widow, claimed one-half of Delbert's estate; she also claimed a widow's allowance.

Mabel contends that the prenuptial agreement was void because of the failure of Delbert to make a full disclosure of the amount and value of his property. At the time of his death Delbert had property of the value of at least $320,000.00; Mabel had property of the value of about $28,000.00.

On hearing, Mabel testified that she had known Delbert more than thirty years, that she knew he had property in Kansas, knew he had ranch property in Colorado and that she had visited some of Delbert's

ranch properties and that she knew of the Broadmoor home.

In response to questions by the court she stated:

"Q. Now prior to the time that you and Mr. Stever were married, you knew that he also had some land, did you not?

"A. Well, yes, they'd lived there, and I knew he had some, *but how much, I had no idea.*" (Emphasis supplied.)

The trial court found that:

" * * * the antenuptial agreement which was admitted into evidence by the Court upon agreement of Counsel, is a valid and binding contract between Petitioner and the Decedent, and that there was no fraud, duress, deception, nondisclosure or overreaching on the part of Decedent before, at the time or after the execution of said agreement by Petitioner and Decedent; * * *.

* * *

"The Court further finds that decedent's property at the time of the signing of said antenuptial agreement was largely in real estate located in Kansas and Colorado; the Court finds that Petitioner knew of the extent of decedent's Colorado land, and either knew or should have known of the extent of his Kansas land.

* * *

"The Court further finds that fraud is not presumed under the laws of the State of Colorado and that the burden of proof is upon the party alleging fraud; that the evidence submitted by Petitioner, considered in its most favor [sic] light, is not sufficient to establish fraud on the part of decedent."

The foregoing findings of the trial court are amply supported by the record before us.

Counsel for Mabel predicates his whole case on the bald statement that she "had no idea" how much property Delbert had. This statement does not square with her other testimony and reasonable inferences to

be drawn therefrom which warrant the conclusion of the trial court that she did know the extent of the property.

Mabel had the burden of proving fraud, concealment or failure to disclose. The finding of the trial court that Mabel had failed to meet this burden is well supported by the record before us and will not be disturbed.

Mabel, in removing all of the family furniture from the Broadmoor home and entering into a written three-year lease for the home at $200.00 per month, could not be acting as the widow, but was proceeding according to her rights as provided in the agreement and will, whereby she acquired a life estate in the home. These actions of Mabel following the death of her husband are in conformity with the antenuptial agreement and Delbert's will, and clearly inconsistent with her present position of seeking to renounce the will and ignore the antenuptial agreement.

The judgment of the trial court is affirmed.

MR. JUSTICE SUTTON and MR. JUSTICE FRANTZ concur.