No. 22251.

EUNICE MOATS *v.* HAROLD MOATS.
(450 P.2d 64)

Decided February 10, 1969.

Robert A. Lehman, for plaintiff in error.

James C. Shearon, for defendant in error.

*En Banc.*

Mr. Justice Pringle delivered the opinion of the Court.

Eunice Moats directs this writ of error to a decree granting a divorce to her husband, Harold Moats. For convenience, the parties will be referred to by their first

names. Eunice commenced an action against Harold for separate maintenance in January of 1964. Over a year later, on April 21, 1965, Harold brought an action for divorce against Eunice. In the uncontested separate maintenance proceeding, Eunice was granted a decree on July 19, 1965. Two days later, on July 21, 1965, she filed an answer to the divorce action, and set up the separate maintenance decree as a defense or bar to Harold's claim for divorce.

At the trial of the divorce action, the court received over objection evidence of acts of mental cruelty which occurred prior to July 19, 1965. After reconsidering the objection, the court refused to base a divorce on grounds which occurred before the separate maintenance decree was entered, and accordingly dismissed the complaint because Harold failed to prove acts of mental cruelty occurring after that date.

Thereafter, the court granted Harold's motions for a new trial and a consolidation of the divorce and separate maintenance proceedings. In the second trial, the parties stood on the evidence offered during the first divorce trial. This time, however, the court granted a decree of divorce to Harold based on evidence of acts which occurred prior to July 19, 1965. It further awarded to Eunice alimony of $100 per month, plus $1500 as her share of the property. Eunice seeks review of the judgment.

She contends here (1) that the court erred in granting the divorce to Harold; (2) that the court erred in receiving in evidence an antenuptial agreement; and (3) that the court abused its discretion in allowing her only $1500 as her share of the property. We find no error and therefore affirm the judgment of the trial court.

I.

To support her contention that the court erred in granting the divorce to Harold, Eunice points out that acts of mental cruelty were alleged in the separate

124

maintenance action, and that the court found that Harold was guilty of the acts. According to her argument, the doctrine of collateral estoppel operates to preclude Harold from introducing evidence of any acts which occurred prior to the entry of the separate maintenance decree. We disagree.

There is a conflict of authority on the question whether a separation decree bars a subsequent divorce action brought by the defendant. See Annot., 90 A.L.R.2d 745. In the jurisdictions which hold that the divorce action is barred, the explanation sometimes offered is that implicit in the separation decree is a finding that the wife was innocent of any conduct which might be grounds for a divorce. See *Gough v. Gough,* 101 Cal. App.2d 262, 225 P.2d 668, disapproved on other grounds; *DeBurgh v. DeBurgh,* 39 Cal.2d 858, 250 P.2d 598; *Dallas v. Dallas,* 233 S.W.2d 738 (Mo.App.). In states which recognize the doctrine of recrimination, the granting of a decree of separate maintenance implies a finding of innocent conduct on her part, for her own misconduct would preclude her from obtaining a decree.

But the doctrine of recrimination is no longer part of the law in Colorado. C.R.S. 1963, 46-1-4; *Schrader v. Schrader,* 156 Colo. 521, 400 P.2d 675. Consequently, the rationale which compels certain other appellate courts to imply a finding of the wife's innocent conduct in an uncontested proceeding is not applicable in Colorado.

Our course, furthermore, has been partially charted by the legislature. By statute, a decree granting separate maintenance does not bar either party from subsequently bringing and maintaining an action for divorce. C.R.S. 1963, 46-2-2.

In the instant case, the statutory ground of mental cruelty was alleged in both the action for divorce and the action for separate maintenance. But since recrimination is no longer involved, the only issue decided in the uncontested separate maintenance action was

whether the husband was guilty of cruelty. Whether the wife was guilty was never in issue. *Clark v. Clark,* 80 Nev. 52, 389 P.2d 69. Accordingly, the doctrine of collateral estoppel does not preclude evidence bearing on Eunice's misconduct, and the trial court did not err in receiving the evidence. See *Gustafson v. Gustafson,* 178 Minn. 1, 226 N.W. 412.

 Eunice also argues that, because Harold did not file a counterclaim for divorce against her complaint for separate maintenance, the compulsory counterclaim provisions of R.C.P. Colo. 13(a) now bar his suit for divorce, since his claim "arises out of the transaction or occurrence" which was the subject of her earlier action. We disagree. R.C.P. Colo. 81(b) provides that the rules shall not govern procedure and practice in actions in divorce or separate maintenance where they may conflict with the procedure and practice provided by the applicable statutes. In view of C.R.S. 1963, 46-2-2, which provides that a decree granting separate maintenance shall not bar either party from "subsequently" bringing and maintaining an action for divorce, we conclude that R.C.P. Colo. 13(a) does not bar the present action for divorce. See *Clark v. Clark, supra.* Moreover, the policy of the law is to support and maintain the marriage wherever it is reasonable to do so. The husband should not be penalized because he did not ask for a divorce at the first opportunity. *Clark v. Clark, supra; Gustafson v. Gustafson, supra.*

## II.

Prior to their marriage, Eunice and Harold executed an agreement which specifically provided that a designated savings account and the house and lot which Harold then owned were to remain his separate property during the marriage, and that a different savings account should remain her separate property. The house and lot, which were appraised at $19,750, were purchased by Harold and his first wife, who was later killed in an automobile accident. After Harold married Eunice, they

lived in the same house. At the trial Eunice testified that Harold owned the house "free and clear" before he married her. Although the appraisal of the house and lot appears in the record, the amounts held in the savings accounts are unstated.

Eunice objected to the introduction of the agreement essentially on the grounds that she was induced to sign the contract without knowledge of its contents and without knowledge of its legal effect, and that the contract was therefore invalid, and on the further ground that the contract should have been given effect only on the death of either party.

With regard to the first objection, we have already stated that the party contesting the validity of an antenuptial agreement has the burden of proving fraud, concealment or failure to disclose material information. See *In re Estate of Stever,* 155 Colo. 1, 392 P.2d 286. Eunice testified essentially that attorneys for Harold had misled her into believing that the instrument would be void after marriage, and that she had not read it before signing it. On the other hand, Harold testified that he had explained its terms to her and made full disclosure.

Since the testimony was conflicting on the issue of fraud and nondisclosure, it was within the trial court's competence to determine whether the instrument constituted a valid contract between the parties. The judge's admission of the agreement into evidence consti-. tuted an acceptance by him of Harold's version of the circumstances surrounding the execution of the contract, and we cannot say as a matter of law that he was in error in so doing.

We think Eunice's objection that the contract was enforceable only upon the death of the parties has no relevance here, and we do not decide whether antenuptial agreements are enforceable in divorce proceedings. Suffice it to say that, while admitting the agreement into evidence, the trial judge did not find that he

was bound by the terms of the antenuptial agreement. Instead, he indicated that he was making a property division. The fact that both parties, when they were married, had it clearly in mind that each one's property should be reserved for their own respective children by former marriages, is a circumstance which the court was entitled to consider.

### III.

Eunice argues finally that the court abused its discretion in allowing her only $1500 as her share of the property. We emphasize once more that matters of alimony and property settlements between husband and wife are within the sound discretion of the trial judge, whose determination of those matters will not be disturbed if they are supported by the evidence. *Nunemacher v. Nunemacher,* 132 Colo. 300, 287 P.2d 662; *Granato v. Granato,* 130 Colo. 439, 277 P.2d 236.

We point out that the record shows clearly that the house which was given to the husband was not only owned by him free and clear of all encumbrances before the marriage, but also that the major portion of the payment for the house came from an inheritance to his first wife.

The record shows that the parties owned very little outside the house in question. It also shows that Harold earns about $500 a month as gross income from his self-owned barber shop, and that Eunice earns $117 a month. The court ordered Harold to pay monthly alimony of $100, all outstanding miscellaneous bills, plus all attorneys' fees, and gave Eunice $1500 as her share of the property. Under the circumstances, we cannot find an abuse of discretion as a matter of law. See *Miller v. Miller,* 157 Colo. 213, 402 P.2d 66.

The judgment is affirmed.

MR. JUSTICE KELLEY not participating.