**Maurice FRANKS, Plaintiff,**

v.

**Honorable Max C. WILSON et al., Defendants.**

**Civ. A. No. C–5266.**

United States District Court, D. Colorado.

Dec. 14, 1973.

Appeal Dismissed March 25, 1974. See 94 S.Ct. 1583.

Before McWILLIAMS, Circuit Judge, and CHILSON and FINESILVER, District Judges.

## ORDER

PER CURIAM.

This matter came before the Court on the 10th day of December, 1973, upon the plaintiff's motion for a preliminary injunction. Briefs had been filed in support of and in opposition to the motion and the Court after hearing oral argument of counsel, took the matter under advisement.

The plaintiff and defendant, Rebecca R. Franks, were married in Tennessee on December 26, 1969. On December 15, 1969, prior to their marriage, they entered into a "Marriage Contract" a copy of which is attached to the complaint, in which the parties declare they plan to be married and that they enter into the contract "in order to fix certain rights between them - - - .".

The marriage contract provides among other things:

"1. The said intended husband and wife shall be separate in property. Accordingly, they hereby formally renounce those provisions of the Louisiana Civil Code which establish a community of acquets and gains between husband and wife. Further, they hereby formally renounce those provisions of the law of this or of any other state to which they may remove which establish a community of property between husband and wife.

"2. All property and effects of the said husband and wife, whether owned by him or her at the time of the celebration of said intended marriage, or acquired during said marriage, are hereby declared to be separate property, and that of the wife, separate and paraphernal property, and they and each of them hereby expressly reserve to themselves individually the entire administration of their respective particular movable and immovable property, and the respective free enjoyment of each of their revenues.

"5. In the event the intended marriage is unsuccessful, no award shall be made for alimony other than alimony pendente lite, during the pendency of the suit, and then for no greater period than the number of months during which the parties resided together in matrimony. No award shall be made of permanent alimony. No award shall be made of lump sum alimony."

In 1972, the parties moved to Colorado.

The complaint alleges that the plaintiff's wife left him on April 12, 1973, and on April 19, 1973, she started an action for divorce in the District Court in and for the County of Custer, State of Colorado, wherein she seeks not only a dissolution of the marriage but also a "reasonable division of the personal property of the parties", and "temporary maintenance and support pending the outcome of this action."

The plaintiff asserts that his wife's rights to a division of property and for maintenance, support and alimony are governed by the pre-nuptial agreement.

So far the state court in the divorce proceeding has not ruled upon the validity or invalidity of the plaintiff's position.

Nevertheless, the plaintiff has instituted this suit upon the basis that if the state court rules against him, such ruling would violate his federal constitutional rights in that it would impair the obligations of the parties under the pre-nuptial agreement; that it would deprive the plaintiff of his property without due process of law; that it would deny him equal protection of the law and would subject him to involuntary servitude and peonage. He asks this Court to enjoin the state court and his wife from proceeding further in the divorce action and for a declaratory judgment of the federal constitutional questions raised by him.

▉ If the state courts sustain the plaintiff's position, the federal constitutional questions raised by the plaintiff will never materialize.

Whether or not plaintiff's position is correct depends in the first instance upon the law of the State of Colorado. If the law of Colorado is clearly contrary to the plaintiff's position, there is authority which holds that this Court should proceed, without delay, to determine the federal questions raised by the plaintiff.

If the state law is uncertain, we should determine whether or not this Court should abstain and stay further action in these proceedings until the question of state law has been determined by the state courts or proceed to determine the federal questions involved without awaiting the clarification of the state law by the state courts.

For the reasons hereinafter stated, we find the law of Colorado with respect to the question involved is uncertain.

In the circumstances of this case and under the rules and guidelines set forth in Reetz v. Bozanich, 397 U.S. 82, 90 S. Ct. 788, 25 L.Ed.2d 68 (1970), we conclude we should abstain and stay further proceedings herein until the state courts have determined whether or not the pre-nuptial agreement is enforceable and controlling in the divorce action.

In *Reetz*, the Court quoted with approval the following excerpt from the City of Meridian v. Southern Bell Tel. & Tel. Co., 358 U.S. 639 at 640–641, 79 S. Ct. 455, 3 L.Ed.2d 562 as follows:

"Proper exercise of federal jurisdiction requires that controversies involving unsettled questions of state law be decided in the state tribunals preliminary to a federal court's consideration of the underlying federal constitutional questions . . . That is especially desirable where the questions of state law are enmeshed with federal questions . . . Here, the state law problems are delicate ones, the resolution of which is not without substantial difficulty— certainly for a federal court . . . In such a case, when the state court's interpretation of the statute or evaluation of its validity under the state constitution may obviate any need to consider its validity under the Federal Constitution, the federal court should hold its hand, lest it render a constitutional decision unnecessarily."

The Court added that abstention is not necessary in every case where a Federal Court is faced with a question of local law and stated:

"That is why we have said that this judicially created rule which stems from Railroad Comm'n v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 should be applied only where 'the issue of state law is uncertain.' "

▉ We find that the state law is uncertain with respect to the validity or invalidity of the plaintiff's position for the reasons which follow.

Prior to January 1, 1972, the Colorado divorce statute, in addition to authorizing the court to make orders for the

payment of alimony, suit money, court costs, and attorneys fees also provided:

"At the time of the issuance of a divorce decree, or at some reasonable time thereafter as may be set by the court at the time of the issuance of said divorce decree, on application of either party, the court may make such orders, if any, as the circumstances of the case may warrant relative to division of property, in such proportions as may be fair and equitable." C.R.S. 1963—46–1–5(2).

The Colorado Supreme Court in 1969, in Moats v. Moats, 168 Colo. 120, 450 P. 2d 64, considered the effect of a prenuptial agreement in connection with a divorce proceeding and stated:

" . . . we do not decide whether antenuptial agreements are enforceable in divorce proceedings."

We find no decision of the Colorado Supreme Court deciding that question.

In 1971, a new divorce law was enacted by the state legislature, but the uncertainty of the enforceability of a prenuptial agreement in a divorce proceeding still exists.

The 1971 Act which became effective January 1, 1972, (Colorado Revised Statutes, 1963, Chapter 46, 1971 Permanent Cumulative Supplement) repealed the statute quoted *supra* and 46–1–13 provides in its pertinent parts:

"In a proceeding for dissolution of the marriage . . . the court shall set apart to each spouse, his property and shall divide the marital property without regard to marital misconduct, in such proportions as the court deems just after considering all relevant factors including: . . .

"(2)(a) For purposes of this article only, 'marital property' means all property acquired by either spouse subsequent to the marriage except:

(b) Property acquired by gift, bequest, devise, or descent;

(c) Property acquired in exchange for property acquired prior to the marriage or in exchange for property ac-

quired by gift, bequest, devise, or descent;

(d) Property acquired by a spouse after a decree of legal separation;

(e) Property excluded by valid agreement of the parties; and

(f) The increase in value of property acquired prior to the marriage."

The 1971 Act also authorizes the Court to order payment of temporary or other "maintenance" in certain prescribed circumstances.

The Colorado Supreme Court has not construed the statutory provisions pertaining to division of property or maintenance and the question of the enforceability of pre-nuptial agreements in divorce proceedings still exists under the 1971 Act and will continue to exist until the Colorado Supreme Court construes that Act with respect to this question.

It is also pertinent to point out that the Colorado Constitution provides:

(a) That the Colorado General Assembly shall not pass any ex post facto law, nor law impairing the obligation of contracts, (Article II, Section 11, Colorado Constitution) and,

(b) that no person shall be deprived of life, liberty or property without due process of law, (Article II, Section 25, Colorado Constitution).

In determining the question of enforceability of the pre-nuptial agreement in divorce proceedings, these provisions of the Colorado Constitution may require construction by the Colorado Courts in the light of plaintiff's contentions.

As we have previously pointed out, a ruling by the state courts upholding plaintiff's position is dispositive of this action.

" . . . when the state court's interpretation of the statute or evaluation of its validity under the state constitution may obviate any need to consider its validity under the Federal Constitution, the federal court should

hold its hand, lest it render a constitutional decision unnecessarily."

City of Meridian v. Southern Bell Tel. & Tel. Co., 358 U.S. 639 at 640–641, 79 S.Ct. 455, at 457, 3 L.Ed.2d 562; Reetz v. Bozanich, supra, 397 U.S. at page 85, 90 S.Ct. 788.

As applied to divorce proceedings, see Kohler v. Ogilvie, 53 F.R.D. 98 (N.D. Ill.), affirmed 1972, 405 U.S. 906, 92 S.Ct. 938, 30 L.Ed.2d 777.

It is therefore ordered that further proceedings in this action are hereby stayed to permit the plaintiff to obtain from the state courts of Colorado, a determination of whether or not the prenuptial agreement is enforceable in the proceeding now pending in the state court.