596 P.2d 1211 (1979)
In re the MARRIAGE OF Hubert E. INGELS, Appellee, and
Dianne E. Ingels, Appellant.
No. 78-221.
Colorado Court of Appeals, Division I.
March 8, 1979.
Rehearing Denied April 12, 1979.
Certiorari Denied June 25, 1979.
*1212 Strand & Meadows, P. C., Edwin Strand, Colorado Springs, for appellee.
Sheldon, Bayer, McLean & Glasman, P. C., James T. Bayer, Denver, William H. Kirkman, Jr., Colorado Springs, for appellant.
PIERCE, Judge.
Wife appeals that portion of the trial court's decree of dissolution which, pursuant to an antenuptial agreement executed by the parties, determined that there was no marital property to be divided. Wife also appeals the court's order that the parties pay their own attorney's fees. We affirm.
Prior to their April 1968 marriage, the parties executed an agreement which provided, in pertinent part, that:
"The estate of each party shall remain and be his or her separate property, subject entirely to his or her individual control and use, the same as if he and she were unmarried; and neither party shall acquire by force of the contemplated marriage, for himself or herself, his or her heirs, assigns, or creditors, any interest in the other's property or estate, or the right to the control thereof, or any interest in the income, increase, rents, profits, or dividends arising therefrom; and it is further agreed that any property that either party may hereafter acquire or become entitled to shall be owned and held by him or her as though he or she had acquired it before the solemnization of said marriage; and each party hereby agrees in consideration of the contemplated marriage and of the covenants of each party herein set forth, that he or she will *1213 waive, release, and relinquish unto the other party all right to the use and control of his or her separate property, and estate, and the income therefrom. . . ."
Husband petitioned for dissolution in April of 1977, and requested, pursuant to the antenuptial agreement, that no property division be made. Wife admitted that the marriage was irretrievably broken, but denied the validity of the antenuptial agreement.
The trial court found that the agreement was valid, and therefore ordered the parties to keep their own property, except that property which was acquired in their joint names during the marriage. At husband's suggestion, the court awarded wife $1,200 per month in maintenance to terminate in October 1978. It also ordered the parties to pay their own attorney's fees.

I.
Wife first argues that the antenuptial agreement is void as against public policy, because it is not limited to adjusting the parties' rights on death, and thus impermissibly "encourages" dissolution. We disagree.
Several cases in this jurisdiction have recognized that antenuptial agreements are generally valid and enforceable if the parties' marriage is terminated by death. See, e. g., Irwin v. Irwin, 150 Colo. 261, 372 P.2d 440 (1962); In re Estate of Abbott, 39 Colo. App. 536, 571 P.2d 311 (1977). The question of whether they are also generally enforceable in dissolution proceedings was specifically left open by the Supreme Court in Moats v. Moats, 168 Colo. 120, 450 P.2d 64 (1969), though two subsequent cases have implicitly answered this question in the affirmative. In re Marriage of Franks, 189 Colo. 499, 542 P.2d 845 (1975); In re Marriage of Thompson, 39 Colo.App. 400, 568 P.2d 98 (1977). We now make explicit the rule which was tacitly present in Franks and Thompson.
Courts have increasingly recognized that spouses-to-be have the right to enter into realistic antenuptial agreements which contemplate the possibility of dissolution, and have accordingly de-emphasized the traditional public policy argument that such agreements "promote" or "encourage" dissolution:
"A man and woman entering into marriage may pledge their faith `till death do us part' but the unromantic statistics show that many marriages end in separation or dissolution. Spouses who enter into an antenuptial agreement cannot forecast the future; they must, as a realistic matter, take into account both the possibility of lifelong marriage and the possibility of dissolution." In re Marriage of Dawley, 17 Cal.3d 342, 131 Cal. Rptr. 3, 551 P.2d 323 (1976).
We interpret § 14-10-113(2)(d), C.R.S.1973, of the Uniform Dissolution of Marriage Act as a codification of this position, at least to the extent that it permits agreements covering disposition of property in the event of dissolution.[1] Cases such as Popham v. Duncan, 87 Colo. 149, 285 P. 757 (1930), were decided before the Uniform Act and are therefore inapposite.
We also reject wife's argument that the antenuptial agreement violates the statutory provisions governing incremental increases in separate property. Section 14-10-113(2)(d) expressly authorizes the parties to exclude any marital property from the operation of the Act. Thus, while increases in certain separate property are, in the absence of an agreement to the contrary, *1214 to be considered marital property, § 14-10-113(4), C.R.S.1973, a valid antenuptial agreement may properly exclude such increases.

II.
Wife also argues that even if antenuptial agreements are generally cognizable, the agreement here is unenforceable because of fraud, unconscionability, and material nondisclosure. We disagree.
The burden of proof on these matters is on the party seeking to avoid the antenuptial contract. Moats v. Moats, supra; In re Estate of Abbott, supra. Here, there is absolutely no evidence indicating that husband misstated the value of his property or that he in any way caused wife to underestimate his net worth. Nor were the terms of the agreement so unfair, or the parties' bargaining positions so disproportionate, as to render the agreement constructively fraudulent or unconscionable. The agreement stated only that the parties' separate property was to remain separate.
While it is true that the bulk of the assets belonged to husband, the agreement cannot be set aside on this ground alone. See In re Estate of Stever, 155 Colo. 1, 392 P.2d 286 (1964). Wife was a skilled businesswoman with a masters degree in marketing. The record demonstrates that she read the agreement, and that she freely and voluntarily signed it. Cf. Linker v. Linker, 28 Colo.App. 131, 470 P.2d 921 (1970). Under these circumstances, the parties will be held to their bargain.
Wife's argument that the antenuptial agreement was invalid because husband failed to supply her with a detailed list of his assets was addressed and rejected in In re Estate of Lewin, Colo.App., 595 P.2d 1055 (1979). The evidence shows that wife had a general knowledge of the extent of husband's assets, and even though she may have been unaware of their exact value, that fact alone was insufficient to meet her burden of proving constructive fraud through material nondisclosure. Stever, supra; Lewin, supra.
Similarly, while it would have been prudent on husband's part to provide wife with independent counsel, his failure to do so does not render the antenuptial agreement void per se. Lewin, supra. The availability of independent legal advice is just one of many factors which must be taken into account by the fact finder in determining whether an antenuptial agreement has been entered into with full knowledge of its consequences.

III.
We also reject wife's argument that the court erred in failing to award her maintenance. On the contrary, the court did award her $1,200 per month in maintenance until October 1978. It is true that this award was made at husband's suggestion, but that does nothing to change the fact that it was made part of the decree, and is binding on this court absent a showing that the trial court abused its discretion. See Carlson v. Carlson, 178 Colo. 283, 497 P.2d 1006 (1972); In re Marriage of Icke, 35 Colo.App. 60, 530 P.2d 1001 (1974), aff'd, 189 Colo. 319, 540 P.2d 1076 (1975); see also In re Marriage of Corbin, Colo.App., 591 P.2d 1046 (1979). Wife has made no such showing here.

IV.
Finally, wife argues that the court erred in failing to award her attorney's fees. Again, we disagree.
The trial court denied wife's request for attorney's fees "because of the Agreement and also because the respondent (wife) has earning ability and has property of her own which includes some $6,900 in savings." We need not decide the question of whether an antenuptial agreement may lawfully abrogate a trial court's discretion to award attorney's fees, since the agreement here, contrary to the trial court's finding, is silent on the matter. See Franks v. Franks, supra. However, the trial court's alternate conclusion that, independent of the agreement, each party should bear his own costs cannot be overturned absent an *1215 abuse of discretion. See Jensen v. Jensen, 142 Colo. 420, 351 P.2d 387 (1960); In re Marriage of Icke, supra. Our review of the record discloses no such abuse.
Judgment affirmed.
SILVERSTEIN, C. J., and COYTE, J., concur.
NOTES
[1] No similar provision permits antenuptial agreements covering maintenance, and the courts of other jurisdictions which have considered the question are divided over whether such agreements can supplant the trial court's statutory duty to award necessary spousal support. Compare Posner v. Posner, 257 So.2d 530 (Fla. 1972) with Motley v. Motley, 255 N.C. 190, 120 S.E.2d 422 (1961). See generally H. Clark, The Law of Domestic Relations, § 1.9 at 28 (1968); and Gamble, The Antenuptial Contract, 26 U. Miami L.Rev. 692 (1972). We do not reach that question here, however, since the terms of the agreement do not purport to limit the parties' obligation with respect to maintenance. See Tomlinson v. Tomlinson, 352 N.E.2d 785 (Ind.Ct.App. 1976).