In the Matter of the ESTATE of Paul LEBSOCK, a/k/a Paul J. Lebsock, a/k/a Paul Lebsock, Sr., a/k/a Paul J. Lebsock, Sr., Deceased.

Jeanet O. LEBSOCK,
Claimant–Appellant,

v.

Manuel LEBSOCK and Paul Lebsock, Jr., Co–Personal Representatives of the Estate of Paul Lebsock, Respondents–Appellees.

No. 78-588.

Colorado Court of Appeals,
Div. II.

April 24, 1980.

Rehearing Denied May 29, 1980.

Certiorari Denied Sept. 29, 1980.

Arkin, McGloin & Davenport, P. C., Gary C. Davenport, Denver, for claimant–appellant.

Max A. Wilson, Sterling, for respondents–appellees.

RULAND, Judge.

Wife, Jeanet O. Lebsock, appeals from the judgment of the probate court entered upon a jury verdict upholding an antenuptial agreement she executed with her husband, Paul J. Lebsock, Sr., in which she waived all claims against his estate. We reverse and remand for a new trial.

The record reflects that the antenuptial agreement was executed on June 23, 1972, and the couple was married later the same day. The agreement pertains only to disposition of property and it contains no provisions relative to payment of maintenance. The husband died intestate on December 5,

1975, and the wife filed for her elective share of the estate. The wife alleged that the prior agreement was unenforceable, because of the decedent's fraud, concealment, and his failure to make "fair disclosure" as required by § 15–11–204, C.R.S. 1973. At trial, the wife and the personal representative for the estate presented conflicting evidence relative to execution of the agreement and the wife's knowledge of the husband's assets.

Wife first contends that the jury was improperly instructed on the issue of fair disclosure and that the trial court erred in refusing to give her alternative set of instructions. Subsequent to the trial of this case, the opinions of this court in *In Re Marriage of Stokes*, Colo.App., 608 P.2d 824 (1979); *In Re Marriage of Ingels*, Colo.App., 596 P.2d 1211 (1979), and *In Re Estate of Lewin*, Colo.App., 595 P.2d 1055 (1979), were announced, and we view those decisions as dispositive of the parties' contentions on this appeal.

■ Antenuptial agreements are generally enforceable in Colorado. *In Re Marriage of Franks*, 189 Colo. 499, 542 P.2d 845 (1975). But, our courts have recognized that such agreements may be set aside on three distinct grounds. First, the agreement is unenforceable if a spouse establishes that it was entered into as a result of fraud or concealment. *Moats v. Moats*, 168 Colo. 120, 450 P.2d 64 (1969). *In Re Estate of Lewin, supra.* Second, even where fraud or concealment is not established, the agreement may also be set aside if one spouse fails to make a fair disclosure of all relevant information. *In Re Estate of Lewin, supra; In Re Marriage of Ingels, supra.* Finally, the agreement may not be enforced if it is determined to be unconscionable, *In Re Marriage of Ingels, supra*, at the time it was entered into. *In Re Marriage of Stokes, supra.*

As to the issue of fair disclosure, the jury was instructed that each party must have been advised of all material facts "either by direct disclosure, or by the availability of information and facts to the party," and that:

"Even though you find that [wife] did not have actual knowledge of the extent of the assets of [husband] prior to her having signed the agreement . . . *if she had information which would have led a reasonably prudent person to make inquiry* through which she would have learned those facts, *she will be presumed to have knowledge of the facts.*" (emphasis added)

■■ While the concept of "inquiry notice" is relevant when it is alleged that a party is guilty of fraud or concealment, *see Ingels v. Ingels*, 29 Colo.App. 585, 487 P.2d 812 (1971); Colo. J.I. 19:10 (2d ed. 1980), we conclude that this concept is inapposite relative to the duty of fair disclosure imposed by § 15–11–204, C.R.S. 1973. Because of the confidential relationship between parties to an antenuptial agreement, the affirmative duty imposed upon each party to disclose his or her financial status transcends what is normally required for a commercial transaction. *See H. Clark, Antenuptial Contracts*, 50 *U.Colo.L.Rev.* 141 (1979). Thus, while "a general and approximate knowledge" by one party of the other's worth may, in some circumstances, abrogate the duty to make a fair disclosure, *In Re Estate of Lewin, supra*; but see *Linker v. Linker*, 28 Colo.App. 131, 470 P.2d 921 (1970), a party has no duty to make inquiry merely because she has information which would lead a reasonably prudent person to make such inquiry in conjunction with a commercial transaction. Hence, the giving of this instruction constituted reversible error insofar as it was made applicable to the decedent's statutory duty to make a fair disclosure in order to effect any waiver of her interest in his estate.

■■ We have examined the remaining instructions challenged by the wife and find no error. Conversely, the trial court properly refused to instruct the jury pursuant to wife's tendered instruction that the agreement was invalid if the facts and circumstances established "overreaching as to the Widow," or that the agreement was invalid if it was "not fair to the Widow." The agreement is not invalid merely because

there is a disparity in the respective value of the assets held by each spouse. *In Re Marriage of Stokes, supra.* Rather, the terms of the agreement must be so unfair and the parties' bargaining positions so disproportionate as to render the agreement unconscionable. *In Re Marriage of Ingels, supra.*[1] Finally, while agreements have been challenged based upon an allegation of "overreaching," *see e. g., In Re Marriage of Stokes, supra,* this concept combines elements of both fraud and unconscionability. *See, e. g., In Re Baruch's Will,* 205 Misc. 1122, 132 N.Y.S.2d 402 (1954). Hence, an instruction based upon this concept only promotes confusion with the jury.

The trial court was also correct in refusing to instruct the jury pursuant to wife's tendered instructions that the agreement was invalid unless the evidence established that wife received the advice of independent counsel prior to signing the agreement. *In Re Marriage of Ingels, supra.* Finally, and contrary to wife's tendered instruction, absent other facts and circumstances not present here, *see Linker v. Linker, supra,* a fair disclosure is not required if the wife already has a knowledge of the husband's assets. *In Re Estate of Lewin, supra.*

We have considered wife's other contentions of error and conclude that they lack merit.

The judgment is reversed and the cause remanded for a new trial consistent with the views expressed in this opinion.

KIRSHBAUM, J., concurs.

STERNBERG, J., dissents.

STERNBERG, Judge, dissenting:

I dissent.

My point of departure from the majority is its conclusion that the concept of "inquiry notice" applies only in a fraud case and that it has no place in a situation such as this where there is a statutory duty to make fair disclosure. I would apply the "inquiry no-tice" doctrine here as the trial court did. The statute codifies a type of constructive fraud, and, in my view, there is no valid reason to treat cases arising under it differently from other fraud type actions.

There is no case law, no principle of statutory construction, nor any legislative history indicating that the "fair disclosure" required by § 15–11–204, C.R.S. 1973, is such that the waiving spouse is freed from all duties of reasonable inquiry.

Merely because the parties are not at arms–length when the waiver is effected is no basis for the waiving spouse to forego all analysis of a proffered disclosure. The matrimonial embrace may soften, but it does not totally eliminate, a spouse's critical powers.

Here, the asset in question was a farm which husband had sold to his son in return for an $85,000 promissory note. The wife knew the general value of the farm, and knew or should have known that cash or other tangibles–or a note–would have been received in payment therefor. *See Youngblood v. Youngblood,* 457 S.W.2d 750 (Mo. 1970) and *Del Vecchio v. Del Vecchio,* 143 So.2d 17 (Fla.1962). Thus, the fact that she had no actual knowledge of the existence of the note is not significant and should not be the basis for allowing her now to overturn the antenuptial agreement and share in assets she had agreed would not be hers.

Contrary to the situation in *Linker v. Linker,* 28 Colo.App. 131, 470 P.2d 921 (1971), there are no indicia of fraud present here. The jury having been properly instructed, its factual determinations should not be disturbed, and the judgment entered based upon them should be affirmed.

---

1. The test of conscionability for purposes of the Dissolution of Marriage Act is stated in *In Re Marriage of Wigner,* 40 Colo.App. 253, 572 P.2d 495 (1977).