In re ESTATE OF Jack H. LOPATA,
Deceased.

Bernice LOPATA, Petitioner-Appellant,

v.

Barbara Lopata METZEL, and National
City Bank of Denver, N.A. Special Administrator, Respondents-Appellees.

No. 80SA293.

Supreme Court of Colorado,
En Banc.

March 1, 1982.

an antenuptial agreement executed by the appellant and her husband, Jack H. Lopata (decedent).

The appellant contended that the antenuptial agreement was void because the decedent failed to disclose the nature and extent of his assets; she was unduly influenced by the decedent to sign the document; she did not understand her rights as a surviving spouse under Colorado law; and her signature was obtained as a result of fraud, duress, and undue influence.

The trial court concluded that the antenuptial agreement was valid and the appellant failed to establish lack of knowledgeable waiver after fair disclosure. We affirm the judgment.

## I.

The appellant and the decedent were married on August 23, 1970. She was 57 years old, he was 10 years her senior, and both had living children from prior marriages. Three days before their wedding, they executed an antenuptial agreement which provided, *inter alia:*

"9. The parties hereto have read the above and foregoing terms and conditions herein set forth and each of them know and understand the contents herein contained and the terms and effect of each of the conditions herein contained and each have had full opportunity to counsel with the attorney of his or her choice and each is fully satisfied with the terms and conditions contained herein and executes this agreement of his or her free will, act or deed. That each party has full knowledge of the other's assets and that even if such knowledge is inaccurage [sic] and incomplete, the requirement to know the extent of the other's property is hereby waived and stated to be of no consequence in the performance and preparation of this contract."

Feuer, Flossic & Rich, Laurence J. Rich, Denver, for petitioner-appellant.

Grant, McHendrie, Haines & Crouse, P. C., Steven E. Napper, Denver, for Barbara Lopata Metzel.

Arkin, McGloin & Davenport, P. C., Gary C. Davenport, Denver, for National City Bank of Denver, N. A.

ROVIRA, Justice.

Bernice Lopata (appellant) appeals[1] an order of the Probate Court in and for the City and County of Denver denying her petition to take an elective share of her late husband's estate[2] and her petition for exempt property allowance[3] and family allowance.[4] The court's order was based on

1. The appellant asserts that the constitutionality of the dead man's statute, section 13–90–102, C.R.S.1973 (1981 Supp.), is in question. Therefore, this court has initial appellate jurisdiction. *See* section 13–4–102(1)(b), C.R.S. 1973.

2. Section 15–11–201, C.R.S.1973 (1981 Supp.).

3. Section 15–11–402, C.R.S.1973 (1981 Supp.).

4. Section 15–11–403, C.R.S.1973 (1981 Supp.).

The agreement also provided that in the event of death of either party the survivor would not assert any claim, right, interest or widow's allowance in the estate of the deceased, and each waived all rights as surviving spouse. Mr. Lopata also agreed to execute a will in which the appellant would receive $100,000 at the time of his death. Such a will was prepared and signed in 1973, and there is no dispute as to appellant's entitlement to this sum.

Although not required to do so by the terms of the antenuptial agreement, the appellant executed a will in June 1977, leaving a life estate to her husband in the family apartment. This will referred to the antenuptial agreement entered into between the parties.

After trial, the court found that at the time the antenuptial agreement was executed, the appellant was not represented by independent counsel; the decedent's attorney, who drafted the antenuptial agreement, did not advise the appellant of her marital rights as a spouse under Colorado law; there was no evidence, other than paragraph 9 of the agreement itself, that either party had made disclosure to the other of assets prior to the signing of the agreement or had actual knowledge of the nature and extent of the assets of the other; the net worth of the decedent in 1970 was approximately $1,000,000; and the net worth of the appellant was approximately $25,000.

The court, after hearing testimony concerning the education, background, and business experience of the appellant, found that she was well versed in day-to-day business affairs and was accustomed to consulting professionals in matters of law, tax, and accounting. The evidence disclosed that she had one year of college education and had operated a retail business with her first husband until his death. Subsequently, she

was appointed administrator of his estate and worked with an attorney-accountant in selling the business and closing the estate. She also participated in an investment club, and her income tax returns were professionally prepared.

The court concluded that the evidence failed by any standard to establish fraud, concealment, material misrepresentation, or undue influence by Mr. Lopata at the time the antenuptial contract was entered into. Further, the court found that the appellant, having the burden of proof to establish "lack of knowledgeable waiver after fair disclosure" failed to meet that burden and denied her request to have the antenuptial agreement set aside.[5]

II.

There can be no doubt that nuptial agreements are valid and enforceable and will generally be given full force and effect. *In re Marriage of Franks*, 189 Colo. 499, 542 P.2d 845 (1975); *Moats v. Moats*, 168 Colo. 120, 450 P.2d 64 (1969); *Remington v. Remington*, 69 Colo. 206, 193 P. 550 (1920); *In re Estate of Lebsock*, Colo.App., 618 P.2d 683 (1980); *In re Estate of Lewin*, 42 Colo.App. 129, 595 P.2d 1055 (1979). Such agreements provide a means by which parties can arrange their affairs, both prior to and subsequent to marriage, and are fully consistent with the public policy of this state. It is well recognized, however, that the parties to nuptial agreements do not deal at arm's length. Rather, a confidential relationship exists between them, and each has a responsibility to act with good faith and fairness to the other. Such a responsibility contemplates that each party will make fair disclosure of his or her assets to the prospective spouse prior to the execution of the agreement.[6] *See Moats v. Moats, supra.*

**5.** The probate court stated that although it did not agree with appellate court decisions placing the burden of proof as to disclosure on the party seeking to set aside an antenuptial agreement, it felt compelled to so rule because of the holdings of *In re Estate of Lewin*, 42 Colo.App. 129, 595 P.2d 1055 (1979); *In re Marriage of*

*Ingels*, 42 Colo.App. 245, 596 P.2d 1211 (1979); *In re Estate of Abbott*, 39 Colo.App. 536, 571 P.2d 311 (1977).

**6.** *See Watson v. Watson*, 5 Ill.2d 526, 126 N.E.2d 220 (1955); *Hartz v. Hartz*, 248 Md. 47, 234 A.2d 865 (1967); *Rosenberg v. Lipnick*, 377

■ Fair disclosure is not synonymous with detailed disclosure such as a financial statement of net worth and income. The mere fact that detailed disclosure was not made will not necessarily be sufficient to set aside an otherwise properly executed agreement. Where the agreement was freely executed, the fact that one party did not disclose in detail to the other party the nature, extent, and value of his or her property will not alone invalidate the agreement or raise a presumption of fraudulent concealment. *In re Estate of Lewin, supra; In re Estate of Ward*, 178 Kan. 366, 285 P.2d 1081 (1955). Fair disclosure contemplates that each spouse should be given information, of a general and approximate nature, concerning the net worth of the other. Each party has a duty to consider and evaluate the information received before signing an agreement since they are not assumed to have lost their judgmental faculties because of their pending marriage.

In estate proceedings, where there is a claim that the surviving spouse has waived his or her rights, the legislature has codified the fair disclosure requirement by adopting section 2–204 of the Uniform Probate Code. Section 15–11–204, C.R.S.1973 (1981 Supp.). This section provides that rights acquired incident to marriage may be waived, "before or after marriage, by a written contract, agreement, or waiver signed by the party waiving after fair disclosure." *Id.*

### III.

Appellant first contends that the trial court based its decision upon insufficient evidence in that there was no evidence establishing fair disclosure and knowledgeable waiver of rights prior to the signing of the antenuptial agreement. Central to her argument is the contention that the burden of proving fair disclosure is upon the party seeking to uphold the agreement. We disagree.

■ It is well settled that once the proponent of an antenuptial agreement has established the existence of the agreement itself, the party contesting the validity of the antenuptial agreement has the burden of proving fraud, concealment or failure to disclose material information. *Moats v. Moats, supra; In re Estate of Stever*, 155 Colo. 1, 392 P.2d 286 (1964); *In re Marriage of Ingels*, 42 Colo.App. 245, 596 P.2d 1211 (1979); *In re Estate of Lewin, supra; Linker v. Linker*, 28 Colo.App. 131, 470 P.2d 921 (1970).[7] The appellant argues, however, that the legislature altered existing law when it enacted section 15–11–204, C.R.S. 1973 (1981 Supp.).

■ There is no indication in either the language of the statute or of the comments provided by the drafters of the Uniform Probate Code that this section was intended to change burden of proof requirements already established with respect to fair disclosure.[8] We conclude that the legislature,

Mass. 897, 389 N.E.2d 385 (1979); *In re Estate of Strickland*, 181 Neb. 478, 149 N.W.2d 344 (1967); *In re Estate of Kaufmann*, 404 Pa. 131, 171 A.2d 48 (1961); *Friedlander v. Friedlander*, 80 Wash.2d 293, 494 P.2d 208 (1972). However, it has been noted that, in operation, the existence of a confidential relationship generally results in the imposition of a burden of fair disclosure upon the prospective husband. Historically, this burden was based upon an assumption that the male was the dominant force in the relationship and that the female was susceptible to his influence. *Gamble, The Antenuptial Contract*, 26 U.Miami L.Rev. 692 (1972). There is substantial doubt concerning whether this view of premarital relationships is accurate in today's society. *Id. See also* Cathey, *Ante-Nuptial Agreements in Arkansas—A Drafter's Problem*, 24 Ark.L.Rev. 275, 291 (1970). We note that in Florida the legislature recently enacted a statute whereby no disclosure of assets is required if the nuptial agreement is executed before marriage. Fla.Stat. Ann. § 732.702(2) (West 1976).

7. Cases from other jurisdictions are in accord. *See, e.g., Del Vecchio v. Del Vecchio*, 143 So.2d 17 (Fla.1962); *In re Estate of Parish*, 236 Iowa 822, 20 N.W.2d 32 (1945); *In re Estate of Kester*, 486 Pa. 349, 405 A.2d 1244 (1979); *Bibelhausen v. Bibelhausen*, 159 Wis. 365, 150 N.W. 516 (1915). *See generally* Wolson, *Antenuptial Contracts*, 41 Mich.L.Rev. 1133, 1137 (1943).

8. Comments of the drafters of the Code indicate only that this section recognizes the "common and commendable desire of parties to second and later marriages to insure that property derived from prior spouses passes at death to the issue of the prior spouses instead of to

in enacting section 204, intended to codify existing law and not to modify or alter it in any way. Therefore, existing case law consistent with this enactment is still binding with respect to the fair disclosure requirement.[9] *See* 2A *C. Sands, Sutherland's Statutes and Statutory Construction* §§ 50.-01–.05 (4th ed. 1973).

In Colorado, the critical inquiry is whether the agreement was executed after fair disclosure and whether there is an absence of fraud or concealment. *In re Estate of Lebsock, supra.* Thus, antenuptial agreements receive the same scrutiny as any other contract except that there is the additional requirement of fair disclosure imposed upon both parties in recognition of the confidential relationship existing between them.

In the present case, the trial court ruled that there was no evidence of fraud, concealment, material misrepresentation, or undue influence by the decedent and that the appellant had failed to meet her burden of proving a lack of knowledgeable waiver after full disclosure. These findings are supported by the record and are binding on this court. *Linley v. Hanson*, 173 Colo. 239, 477 P.2d 453 (1970). Therefore, the trial court did not err in enforcing the antenuptial agreement.

### IV.

The appellant next argues that placing the burden of proof upon her to establish that there was an absence of fair disclosure and therefore the antenuptial agreement was invalid, and then barring her testimony because of the dead man's statute [10] resulted in a denial of her constitutional rights to equal protection, due process, and access to the courts.

This claim cannot prevail. Generally, it is for the legislature to determine who shall be competent to present testimony in a court of law. *Estate of Freeman v. Young*, 172 Colo. 322, 473 P.2d 704 (1970). Statutory enactments are entitled to a presumption of constitutionality, and the party challenging a statute must prove beyond a reasonable doubt that the statute is constitutionally infirm. *People in Interest of C. M.*, Colo., 630 P.2d 593 (1981).

The dead man's statute involves neither a suspect classification nor an infringement of a fundamental right; therefore, in order to prevail, the appellant must prove that under no conceivable set of circumstances could the statute be said to be rationally related to the furtherance of a legitimate legislative interest. *See Johnson v. Division of Employment*, 191 Colo. 38, 550 P.2d 334 (1976).

We note that the dead man's statute has withstood constitutional challenge in the past. *See Music City, Inc. v. Estate of Duncan*, 185 Colo. 245, 523 P.2d 983 (1974); *Estate of Freeman v. Young, supra.* Its purpose is to protect decedents' estates and mental incompetents from false claims. These parties are in need of protection because they are at a disadvantage in a lawsuit due to their inability to answer the allegations of their opponents. Therefore, the law attempts to place these protected parties on equal ground with their opponents by excluding the testimony of the opponents under certain circumstances. *Wise v. Hillman*, Colo., 625 P.2d 364 (1981).

That this statute has evoked widespread criticism is beyond dispute.[11] Nevertheless, criticism alone will not render a statute unconstitutional. *See Richardson v. Hansen*, 186 Colo. 346, 527 P.2d 536 (1974);

---

the newly acquired spouse." Unif.Probate Code § 2–204, 8 *U.L.A.* 338 (1972).

**9.** The appellee argues that the provisions of section 15–11–204, C.R.S.1973 (1981 Supp.), do not apply because here the antenuptial agreement was executed prior to the effective date of the statute. *See* section 15–17–101(2)(d), C.R.S.1973. Given our conclusion that section 15-11-204 merely codifies existing law, how-

ever, it is unnecessary to address this contention.

**10.** Section 13–90–102, C.R.S.1973 (1981 Supp.).

**11.** *See, e.g., C. McCormick, Handbook of the Law of Evidence* § 65 (2d ed. E. Cleary 1972); 2 *J. Wigmore, Evidence* § 578 (Chadbourn rev. 1979).

*People ex rel. Rodello v. District Court*, 164 Colo. 530, 436 P.2d 672 (1968).

Protecting decedents' estates and mental incompetents is a legitimate legislative objective, and the testimonial bar provided by the dead man's statute is rationally related to the furtherance of that objective.

The judgment of the trial court is affirmed.

DUBOFSKY and QUINN, JJ., dissent.

LEE, J., does not participate.

QUINN, Justice, dissenting:

I respectfully dissent. Admittedly, an antenuptial agreement serves a valid purpose in making it possible for prospective marital partners to permit their estates to pass upon death to persons other than the surviving spouse. However, as this case demonstrates, the cumulative effect of the majority's allocation of the burden of proof and of the Dead Man's statute, section 13–90–102, C.R.S.1973 (1981 Supp.), creates what is virtually an insurmountable barrier to a surviving spouse's ability to establish her right to take an elective share of the decedent's estate in the face of an antenuptial agreement. In my view basic considerations of fairness require that the administrator of the estate and the decedent's heir, both of whom are raising the antenuptial agreement as a bar to the surviving spouse's elective share, should bear the burden of proving fair disclosure to the surviving spouse and knowledgeable waiver by her of her marital rights of inheritance.

Section 15–11–201, C.R.S.1973, provides a surviving spouse with a right to an elective share of one-half of the decedent's augmented estate. This statutory right is intended to insure a surviving spouse a fair share in the decedent's estate in the event the decedent has failed to make adequate provision for her by will. Recognizing that a decedent's failure to provide support for a surviving spouse may place that burden upon the state, we have traditionally imposed a high standard of proof for waiver of a surviving spouse's statutory widow's allowance. *See, e.g., McLaughlin v. Craig*, 117 Colo. 67, 184 P.2d 130 (1947); *In re Bradley's Estate*, 106 Colo. 500, 106 P.2d 1063 (1940); *In re William's Estate*, 101 Colo. 262, 72 P.2d 476 (1937). For purposes of this evidentiary requirement, I see no difference between a claim for a widow's allowance and claim involving a surviving spouse's elective share. The majority's opinion, however, cuts against the grain of this requirement.

The Dead Man's statute prohibits a party making a claim against the estate of a deceased person from testifying in the first instance as to any transactions with the deceased. Since this statute renders the surviving spouse incompetent to testify regarding the decedent's failure to make fair disclosure of his assets to her at the time of the execution of the agreement, she is significantly impaired in her ability to prove anything whatever about the agreement. I believe the appropriate allocation of proof in this case should be that, once the surviving spouse asserts her right as a spouse to her elective share, the party asserting the antenuptial agreement as a bar to that statutory claim should bear the burden of establishing the validity of the antenuptial agreement. This allocation of proof places the burden on that party which most likely will have information concerning what disclosures, if any, were made when the agreement was executed.

In my opinion placing the burden of proof on the party asserting the validity of the agreement comports with section 15–11–204, C.R.S.1973 (1981 Supp.), of the Colorado Probate Code, which originally became effective on July 1, 1974, and now provides:

"The rights of an election of a surviving spouse and the rights of the surviving spouse to exempt property allowance, family allowance, and homestead exemption may be waived, wholly or partially, before or after marriage, by written contract, agreement or waiver signed by the party waiving *after fair disclosure*." (Emphasis added).[1]

I read this section as requiring the party who raises an antenuptial agreement as a

1. The homestead exemption was added to sec- tion 15–11–204 in 1981. In all other respects

defense to a surviving spouse's elective share to prove that fair disclosure was made to the surviving spouse before the antenuptial agreement was executed. In this case the issue of waiver arose in the course of a proceeding which commenced after the effective date of the Probate Code. Under these circumstances I see no reason not to apply section 15–11–204 to this case. *See* section 15–17–101(1) and (2), C.R.S.1973 and 1981 Supp.

The injustice of placing the burden of proof on the surviving spouse in this case is apparent from the findings and conclusions of the probate court. The court found that the antenuptial agreement was drafted by the decedent's attorney who failed to advise the surviving spouse either of her marital rights or of the effect of executing the agreement. Additionally, the court noted that there was no evidence establishing that the surviving spouse, whose estate was grossly inferior in value to that of the decedent, had actual knowledge of the nature and extent of the decedent's assets when the agreement was executed. On the basis of these findings the court concluded that the parties asserting the antenuptial agreement as a bar to the surviving spouse's claim have "failed to prove knowledgeable waiver and fair disclosure" and, under these circumstances, the surviving spouse "should not fairly be bound by her execution of the instrument." Nevertheless, the probate court felt bound to follow Colorado appellate decisions which placed the burden of proof upon the party contesting the validity of the antenuptial agreement.

Those Colorado decisions relied upon by both the probate court and the majority in resolving this matter did not consider the allocation of the burden of proof in the context of the Dead Man's statute. *See Moats v. Moats*, 168 Colo. 120, 450 P.2d 64 (1969); *In re Estate of Stever*, 155 Colo. 1, 392 P.2d 286 (1964); *In re Marriage of Ingels*, 42 Colo.App. 245, 596 P.2d 1211 (1979); *In re Estate of Lewin*, 42 Colo.App. 129, 595 P.2d 1055 (1979); *Linker v. Linker*, 28 Colo.App. 131, 470 P.2d 921 (1970). To the extent that these cases might be read

the present statute is identical to the original

broadly to control the burden of proof in a case, as here, involving a surviving spouse who is prohibited from testifying under the Dead Man's statute, I would no longer follow them. "Stare decisis is not an iron mold into which every utterance by a Court, regardless of circumstances, parties, economic barometer and sociological climate, must be poured, and, where, like wet concrete, it must acquire an unyielding rigidity which nothing later can change." *Flagiello v. Pennsylvania Hospital*, 417 Pa. 486, 511, 208 A.2d 193, 205 (1965). Rather, when judicial precedent has the effect of prohibiting a party from presenting necessary evidence in connection with an important statutory claim, the precedent itself is amiss and should be discarded. I would reverse the judgment and, based upon the detailed findings and conclusions of the probate court, would remand for the entry of judgment in favor of the surviving spouse.

I am authorized to say that DUBOFSKY, J., joins me in this dissent.